In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2884

Rhodda Thompson,

Plaintiff-Appellant,

v.
Altheimer & Gray,

Defendant-Appellee.

Appeal from the United States District Court
for the
Northern District of Illinois, Eastern
Division.
No. 96 C 4319--Morton Denlow, Magistrate Judge.

Argued February 21, 2001--Decided April 19,
2001

  Before Posner, Kanne, and Diane P. Wood,
Circuit Judges.

  Posner, Circuit Judge.  The plaintiff
brought suit against her employer under
Title VII of the Civil Rights Act of
1964, charging racial discrimination. The
case was tried, the jury returned a
verdict for the defendant, and the
plaintiff appeals, arguing that a juror
named Leiter should have been struck for
cause. If the plaintiff is right, she is
entitled to a new trial without having to
show that Leiter's presence on the jury
caused the jury to side with the
defendant. Denial of the right to an
unbiased tribunal is one of those trial
errors that is not excused by being shown
to have been harmless. Gray v.
Mississippi, 481 U.S. 648, 668 (1987);
Grancorvitz v. Franklin, 890 F.2d 34, 41
(7th Cir. 1989); Fietzer v. Ford Motor
Co., 622 F.2d 281, 286 (7th Cir. 1980);
Dyer v. Calderon, 151 F.3d 970, 973 and
n. 2 (9th Cir. 1998) (en banc).

  But what of the plaintiff's failure to
use any of her three peremptory
challenges to strike Leiter? She says

that she used up her peremptory challenges on jurors whom she considered even less likely to favor her cause than Leiter was. This acknowledgment might seem to imply--since the plaintiff is not contending that any of those jurors had to be stricken for cause--that she can't really think that Leiter was biased; for if Leiter was biased and those other three were not, surely the plaintiff would have used a peremptory challenge to get rid of Leiter first. That doesn't follow. Bias is only one factor in deciding whether to challenge a juror. A lawyer might be utterly convinced that a member of the jury venire would vote against his client no matter what the evidence showed, and yet his belief might be based on a hunch that he could not articulate as a ground for a challenge for cause. He might be more eager to strike that juror than one who had an evident bias (though the judge hadn't been convinced of this), for he might think he could overcome the hurdle posed by that bias more readily than he could persuade the stubborn but not demonstrably biased juror.

A plaintiff may have a duty to use a peremptory challenge to remove a juror whom the judge correctly or incorrectly has failed to remove for cause, in which event a plaintiff who fails to use a peremptory challenge for this purpose will have forfeited the right to appeal the denial of the challenge for cause. In Ross v. Oklahoma, 487 U.S. 81 (1988), the Supreme Court in a capital-punishment case upheld against constitutional challenge a state rule imposing just such a duty. On the basis of Ross we then held that the loss of a peremptory challenge because the challenge was used to "cure" the judge's error in failing to remove a juror challenged for cause did not impair the right to an impartial tribunal. United States v. Nururdin, 8 F.3d 1187, 1191 (7th Cir. 1993). That became the law of the nation in United States v. Martinez-Salazar, 528 U.S. 304 (2000); see also United States v. Polichemi, 219 F.3d 698, 705-06 (7th Cir. 2000); Walzer v. St. Joseph State Hospital, 231 F.3d 1108, 1111 (8th Cir. 2000). All but Ross are different cases from the present one, however. In those cases the peremptory challenge had been exercised and the biased juror removed. As a result, the jury that decided the defendant's guilt

was impartial. But could a defendant preserve the issue of bias simply by failing to use his peremptory challenge to remove the biased juror? Since the use of a peremptory challenge to remove that juror would cure the judge's error, the defendant's failure to use a peremptory challenge to do this might well be thought to make the error a self-inflicted wound, as argued in a concurring opinion in Martinez-Salazar. 528 U.S. at 318-19. The majority opinion, however, suggests a different view--that the litigant can let the biased juror be seated and seek to reverse the adverse judgment (if one results) on appeal on grounds of bias. See id. at 314-17. The suggestion is dictum, and can be questioned as putting the litigant in a heads-I-win-tails-you-lose position: if he wins a jury verdict, he can pocket his victory, and if he loses, he can get a new trial.

But this is not the case in which to consider whether to take on the Supreme Court's dictum, since the defendant is not arguing that the plaintiff's failure to use a peremptory challenge against Leiter prevents the plaintiff from challenging Leiter's presence on the jury. It argues the distinct point that the plaintiff cannot complain about a violation of her statutory right to three peremptory challenges. 28 U.S.C. sec. 1870; see also Fed. R. Civ. P. 47(b). The defendant is of course right. Martinez-Salazar states that securing an impartial jury is one of the intended uses of peremptory challenges, 528 U.S. at 316; see also Walzer v. St. Joseph State Hospital, supra, 231 F.3d at 1111; United States v. Quinn, 230 F.3d 862, 865 (6th Cir. 2000), and hence may be a reason why the statutory allotment is three rather than one or two or none. (Martinez-Salazar was a criminal case, but we cannot think of any difference which that would make.) But the statutory question is a side issue. The important question is whether the plaintiff's constitutional right to an impartial tribunal was infringed. Let us see.

During the voir dire of the jury, the judge asked the members of the venire whether "there is something about this kind of lawsuit for money damages that would start any of you leaning for or against a particular party?" Leiter

raised her hand and explained that she has "been an owner of a couple of businesses and am currently an owner of a business, and I feel that as an employer and owner of a business that will definitely sway my judgment in this case." The judge asked her whether "if I instructed you as to what the law is that you would be able to apply the law recognizing that you are a business owner?" To which she replied, "I think my experience will cloud my judgment, but I can do my best." The judge permitted the lawyers also to ask questions of the prospective jurors and Thompson's lawyer asked Leiter, "And you said earlier that you were concerned that your position as a business owner may cloud your judgment. Can you tell me how?" And she replied, "I am constantly faced with people that want various benefits or different positions in the company [what Thompson was seeking from her employer, the defendant, Altheimer & Gray] or better contacts or, you know, a myriad of issues that employers face on a regular basis, and I have to decide whether or not that person should get them." The lawyer then asked Leiter whether she was concerned "that if somebody doesn't get them [benefits sought from their employer] they're going to sue you," and she answered, "Of course." Asked then whether "you believe that people file lawsuits just because they don't get something they want?", she answered, "I believe there are some people that do." In answer to the next and last question, "Are you concerned that that might cloud your judgment in this case?" she said, "I think I bring a lot of background to this case, and I can't say that it's not going to cloud my judgment. I can try to be as fair as I can, as I do every day."

That was the end of the voir dire of Leiter. After refusing to strike her for cause (though urged to do so by the plaintiff's lawyer), and releasing the jurors who had not been selected for the jury (the defendant had also exercised its three peremptory challenges, none overlapping with the plaintiff's), the judge asked the eight remaining jurors, that is, the jurors selected to hear the case, whether they would follow his instructions on the law even if they didn't agree with them and whether they would be able to suspend judgment until they had heard all the evidence. The

question was asked to the jurors at large and all either nodded their heads or said yes. The defendant, again perhaps dropping the ball, makes nothing of Leiter's failure at this stage to reiterate her doubts about her ability to exercise an unclouded judgment. The defendant is content to argue that the answers that Leiter gave to the earlier questions by the judge, and the questions by Thompson's lawyer, did not require that Leiter be struck for cause.

Our review of the trial judge's ruling with respect to a challenge for cause is deferential, Salvato v. Illinois Dept. of Human Rights, 155 F.3d 922, 927 (7th Cir. 1998); Pitsonbarger v. Gramley, 141 F.3d 728, 734-35 (7th Cir. 1998); United States v. Vega, 72 F.3d 507, 512 (7th Cir. 1995); United States v. Blom, 242 F.3d 799, 805 (8th Cir. 2001); United States v. Beasley, 48 F.3d 262, 266 (7th Cir. 1995); Wolfe v. Brigano, 232 F.3d 499, 502 (6th Cir. 2000), but not completely supine, and it is pertinent to note that no issue of credibility is pre sented. There is no argument that Leiter was not telling the truth. The issue is interpretive: did what she say manifest a degree of bias such that the judge abused his discretion in failing to strike her for cause?

In defense of his ruling, the defendant has come up with only one case, United States v. Ricketts, 146 F.3d 492, 496 (7th Cir. 1998), where we upheld the trial judge's refusal to strike for cause jurors who, in a trial for complicity in a prison riot, said on voir dire that they would tend to believe prison guards over inmates. The defendant says in its brief that we did this even though the jurors in question "never testified to their willingness or capacity to put this tendency aside for the purposes of trial." That is an inaccurate description of our decision, and leaves the defendant startlingly bereft of apposite case law. The trial judge in Ricketts had faulted defense counsel for failing to follow up the question about the juror's tendency to believe guards over inmates, and as a result of that failure the jurors had never had a chance to affirm their willingness or capacity to judge impartially. The tendency was not itself a sign of bias. There is a critical difference between a "prior [belief]" in

the Bayesian statistician's sense and "bias" in the sense that requires disqualification of a juror or judge. Everyone brings to a case a set of beliefs that may incline him in one direction or another. A person told that X had been indicted, and asked whether he thought X guilty, might reply that he thought X probably was guilty because few innocent people are indicted. That would be a prior. It would be a bias only if it were irrational or unshakable, so that the prospective juror "would be unable to faithfully and impartially apply the law," Wainwright v. Witt, 469 U.S. 412, 424 (1985) (emphasis added), would be, in other words, "adamant," Fleenor v. Anderson, 171 F.3d 1096, 1099 (7th Cir. 1999)--in our hypothetical if, for example, the person added, "Nothing will ever convince me that the government would indict an innocent person." Cf. Ross v. Oklahoma, supra, 487 U.S. at 83-84.

When Leiter said that she believed that some people sue their employer just because they haven't gotten a promotion or a raise or some other benefit, she was not manifesting bias. She was expressing a prior belief (prior, that is, to hearing any evidence in this case) that was not only not irrational, but was undoubtedly true--there are indeed some people who will sue their employer just because of disappointment over the failure of the employer to give them something they want. In other words, there are spurious suits, in the employment domain as elsewhere. Leiter could not be thought biased for holding a true belief, or even for holding it unshakably if it is indubitably true. The belief that some employees make bogus claims against employers is so obviously true that it could not be shaken; but inability to set aside a clearly sound belief does not make for a biased juror. It makes for a realistic one.

Suppose a member of the venire in a case involving alleged sex discrimination by a police department stated his belief that men on average have greater upper-body strength than women. Suppose he added that this belief was unshakable in the sense that if some social scientist testified otherwise, he would conclude that he was being fed junk science. Should this juror be disqualified? Not automatically, surely. The relevant

questions would be whether he could distinguish averages from individuals, and thus recognize the possibility that a given woman might have greater upper-body strength than a given man, and whether he was so fixated on the average sex difference in upper-body strength that he was not open to the possibility that a woman whose upper-body strength was indeed less than that of the least strong firefighter in the fire department could nevertheless be as good a firefighter, or even a better one.

The question in this case was not whether Leiter's belief that some claims against employers are spurious was true or false (it was, as we have noted, true), but whether this belief would somehow impede her in giving due weight to the evidence and following the judge's instructions. That question was not adequately explored. The last thing Leiter said before the judge refused to strike her for cause was that she couldn't say the "background" she brought to this case wasn't going to "cloud" her judgment. She said she would try to be fair, but she expressed no confidence in being able to succeed in the attempt. She may have realized that because of bad experiences in the past, she might have difficulty separating the logically distinct propositions that some claims against employers are bogus and that this claim must be bogus because it is a claim against an employer.

Had she said she could not be fair, the judge would of course have had to strike her for cause. She did not say that, and so the judge (the defendant, though citing Ricketts, does not argue that the plaintiff's lawyer was at fault in failing to follow up his question whether Leiter's background would cloud her judgment) should have followed up by asking her, as he later asked the jury en masse, whether she would follow his instructions on the law and suspend judgment until she had heard all the evidence.

Instead the matter was left dangling, just as it had been in Martinez-Salazar. That juror whom the defendant in that case used a peremptory challenge to excuse after the judge refused to excuse him for cause, when asked "whether, if he were a defendant facing jurors with

backgrounds and opinions similar to his own, he thought he would get a fair trial," answered: "I think that's a difficult question. I don't think I know the answer to that." 528 U.S. at 308 (emphasis added). And when asked whether he "would feel more comfortable erring on the side of the prosecution or the defense," he said he "would probably be more favorable to the prosecution." Id. (emphasis added). When the judge then scolded him for reversing the presumption of innocence, the juror said, "I understand that in theory." Id. (emphasis added). The judge nevertheless refused to excuse the juror for cause because "he said . . . he could follow the instructions, and he said . . . 'I don't think I know what I would do,' et cetera." Id. at 309. The Supreme Court held that in these circumstances the judge had erred in not allowing the challenge for cause. It is just like our case. The judge didn't push hard enough to determine whether Leiter could relinquish her prior beliefs for purposes of deciding the case.

Had the judge pushed Leiter and had she finally given unequivocal assurances that he deemed credible, his ruling could not be disturbed. See Lockett v. Ohio, 438 U.S. 586, 595-96 (1978); Salvato v. Illinois Dept. of Human Rights, supra, 155 F.3d at 926-27; Pitsonbarger v. Gramley, supra, 141 F.3d at 735; Art Press, Ltd. v. Western Printing Machinery Co., 791 F.2d 616, 619 (7th Cir. 1986); United States v. Blom, supra, 242 F.3d at 805. But he failed to do that. The venire contained 20 prospective jurors, and more than enough were left to make up a full jury of 8 when he refused to excuse her. A candid and thoughtful person, if one may judge from the transcript, Leiter would probably have made an excellent juror--in another case.

When a prospective juror manifests a prior belief that is both material and contestable (for, to repeat an earlier point, it is not bias to cling to a belief that no rational person would question), it is the judge's duty to determine whether the juror is capable of suspending that belief for the duration of the trial. When as in this case the record contains no assurances that the belief is "shakable," that the prospective juror can exercise a judgment

unclouded by that belief, the verdict cannot stand. See Art Press, Ltd. v. Western Printing Machinery Co., supra, 791 F.2d at 619; Wolfe v. Brigano, supra, 232 F.3d at 502-03; United States v. Gonzalez, 214 F.3d 1109, 1113-14 (9th Cir. 2000); United States v. Padilla-Mendoza, 157 F.3d 730, 733-34 (9th Cir. 1998); United States v. Salamone, 800 F.2d 1216, 1226-27 (3d Cir. 1986). "When a juror is unable to state that she will serve fairly and impartially despite being asked repeatedly for such assurances, we can have no confidence that the juror will 'lay aside' her biases or her prejudicial personal experiences and render a fair and impartial verdict." United States v. Gonzalez, supra, 214 F.3d at 1114. That's this case. Missing are those "unwavering affirmations of impartiality" that permitted the district judge in United States v. Garcia, supra, 936 F.3d at 653, to find the challenged juror unbiased.

Reversed and Remanded.

    DIANE P. WOOD, Circuit Judge, concurring. I agree wholeheartedly with the majority's conclusion that the plaintiff, Rhodda Thompson, is entitled to a new trial on her Title VII claims because the district court permitted Juror Leiter to sit without obtaining the kind of unequivocal assurances of impartiality that are required to assure an unbiased trier of fact. Along the way toward reaching that conclusion, however, the majority expresses skepticism about the wisdom of the principle the Supreme Court articulated in United States v. Martinez-Salazar, 528 U.S. 304 (2000), to the effect that there is no rule compelling a defendant to use or to refrain from using a peremptory challenge on a particular basis, or when a particular set of facts is present. Id. at 314. Instead, the Court held, after the party has failed in an effort to convince the trial court to strike a juror for cause, that party has "the option of letting [the prospective juror] sit on the petit jury and, upon conviction, pursuing a Sixth Amendment challenge on appeal." Id. at 315. Martinez-Salazar ultimately held that

once a defendant has elected to use a peremptory challenge curatively, the only question that survives is whether the jury that actually sat was an unbiased one.

   I do not share the majority's reservations about this rule, and I therefore support strongly the majority's decision to reserve any exploration of this rule for another day (assuming for the sake of argument that the Supreme Court has left us any room in which to operate). In my opinion, there is much to commend in the system the Supreme Court sketched out. It is important to remember that no problem arises until the party has challenged a prospective juror for cause and the court has rejected the challenge. The district court thus cannot be sand-bagged into permitting a biased juror to sit. Once the court has ruled on all the challenges for cause, the lawyers representing both sides are left with an array of prospective jurors. At that point, each lawyer must decide how best to use the allotted peremptory challenges. I see no way of second-guessing that choice at the appellate level. As the majority acknowledges, certain prospective jurors might not reveal enough information on the record to support a challenge for cause, and yet the lawyer might feel positive that these individuals would in fact be biased. Even with respect to the prospective jurors who were challenged unsuccessfully for cause, the chances that any of those decisions by the trial court amounted to reversible error are just that--chances-- and the responsible lawyer cannot count on convincing an appellate court later that the ruling was in error. In the end, therefore, there would be no objective way to second-guess the lawyer's decisions about the way her peremptory challenges were used. The Supreme Court's Martinez-Salazar holding quite properly reflects this fact.

   The one issue that I regard as more complex concerns a plaintiff who does not exhaust her peremptory challenges. That is not Thompson's situation, but it occasionally happens that not all peremptories are used. If there are-left-over peremptories and the plaintiff has failed to convince the court to strike a certain juror for cause, it is at least imaginable that a decision not to use an

available peremptory challenge on that juror might amount to a waiver of the right to assert that the juror should not have sat. As I said, that is not this case. It is possible that there might be further complications in an actual case that I cannot envision at this time that would justify even this kind of strategic decision.

With this qualification, I concur in the court's opinion.