In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2539

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIAM ALLEN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 CR 238—**Charles P. Kocoras**, *Judge.*

ARGUED APRIL 5, 2010—DECIDED MAY 25, 2010

Before EASTERBROOK, *Chief Judge*, and BAUER and
WOOD, *Circuit Judges.*

BAUER, *Circuit Judge.* William Allen appeals his con-
viction for advertising, transporting, and possessing child
pornography in violation of 18 U.S.C. §§ 2251(d)(1)(A),
2252A(a)(1), and 2252A(a)(5)(B). He claims that the
district court erred by denying his for-cause challenge to
a prospective juror and by admitting into evidence por-
tions of a chat log where he claimed to have com-

mitted other crimes. We have reviewed the district court's rulings for an abuse of discretion. Finding no prejudicial error, we affirm.

## I. BACKGROUND

Undercover FBI agent Kenneth Jensen logged into a chatroom and observed an advertisement for a file server, operated by someone calling himself "kidbot," that allowed people to trade child pornography with kidbot. Agent Jensen connected to kidbot's server, uploaded what was supposed to be an image of child pornography so that he could gain credit to download, and proceeded to download forty-two files before getting cut off, ostensibly because the image he had uploaded for credit was from the Hubble telescope, not child pornography. Three of the files he downloaded from kidbot showed a pre-pubescent girl engaging in sexual activity with an adult male.

Agents executed a warrant to search the home of William Allen's mother, the AT&T subscriber to whom kidbot's Internet Protocol address had been dynamically registered. They found Allen, who was twenty-one years old and living with his mother and siblings, alone in his bedroom with a desktop computer and other storage devices containing more than one thousand images of child pornography. They also discovered a log file on the desktop identifying the desktop as the file server to which Agent Jensen had connected, and chat logs where someone identifying himself as "William" and as a "21-year old male from Illinois" described how he

used computers and chatrooms to trade child pornography. In another chat log the agents discovered, Allen claimed to have molested minor children.

Allen was indicted for advertising, transporting, and possessing child pornography. During jury selection, prospective jurors completed a written questionnaire before appearing in court. The questionnaire asked whether anything would make it difficult for a prospective juror to be fair, to which one prospective juror replied "yes" because of an incident in which a man had attempted to kidnap her then six-year-old, now grown daughter. The judge then asked the prospective juror personally whether "that experience would somehow prejudice you against the defendant in this case?" The prospective juror replied, "Yes." App. A-3 at 139.

The judge then instructed her that "both sides are entitled to fairness and, actually, a clean slate in your mind, so that whatever exists in your past does not carry over and influence the decision in this case," and asked her once more whether she could be open-minded, perhaps set the experience aside, and give Allen the presumption of innocence. She replied that she could. App. A-3 at 140.

The judge then allowed Allen's attorney to perform follow-up questioning. He brought up the questionnaire and again asked the prospective juror whether "the nature of the charges alone would make it difficult for you to be fair to both parties." Again, she replied, "Yes," indicating that she didn't know whether she would start the case by giving Allen the presumption of innocence. App. A-3 at 141-42.

The judge again instructed her, "There is not anything wrong with having an impact, but it is whether, just the nature of the charges, you find so offensive that you will not give the guy the benefit of the doubt?" She replied, "I would give him the benefit of the doubt until everything is presented, yes." She was questioned no further. App. A-3 at 142.

Allen had used all of his peremptory challenges so he objected that the prospective juror should be stricken for cause. The judge disagreed and allowed her to be seated as the twelfth member of the jury.

The jury found Allen guilty and the district court sentenced him to thirty years in prison. Allen does not argue that thirty years in prison for a twenty-one-year-old first-time offender who never left his mother's home is constitutionally excessive. *Cf. Graham v. Florida*, No. 08-7412 (U.S. May 17, 2010) (vacating a term-of-years sentence as categorically unconstitutional); *Solem v. Helm*, 463 U.S. 277 (1983) (vacating a term-of-years sentence because it was unconstitutional as applied to the facts of the case). Rather, he limits his appeal to the district court's seating of the prospective juror and to the admission into evidence of the chat log portions where he claimed to have molested minors.

## II. DISCUSSION

### A. Denial of For-Cause Challenge to Prospective Juror

We review Allen's claim that the district court erroneously denied his for-cause challenge for an abuse of

discretion. *See, e.g., Thompson v. Altheimer & Gray*, 248 F.3d 621, 624-25 (7th Cir. 2001); *United States v. Nelson*, 277 F.3d 164, 201 (2d Cir. 2002). In reviewing denials of challenges for cause, we "accord great deference to the judgment of the experienced trial judge based on his unique opportunity to assess the credibility of the jurors during voir dire examination, as well as their demeanor throughout the course of the trial." *United States v. Nururdin*, 8 F.3d 1187, 1190 (7th Cir. 1993) (quoting *United States v. Barnes*, 909 F.2d 1059, 1070-71 (7th Cir. 1990)); *accord Wainwright v. Witt*, 469 U.S. 412, 428 (1985); *see also Thompson v. Keohane*, 516 U.S. 99, 111 (1995) (according "special deference"); *Nelson*, 277 F.3d at 201-02 ("There are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empaneling of a jury.") (quoting *United States v. Ploof*, 464 F.2d 116, 118 n.4 (2d Cir. 1972)).

The Constitution guarantees criminal defendants "due process of law" and the right to "an impartial jury." U.S. Const. amends V, VI. These mandates are satisfied, when seating a prospective juror despite a party's for-cause challenge, if the prospective juror has given final, unequivocal assurances, deemed credible by the judge, that for purposes of deciding the case, she can "set aside any opinion [she] might hold," *Patton v. Yount*, 467 U.S. 1025, 1036 (1984), "relinquish her prior beliefs," *Thompson*, 248 F.3d at 626, or "lay aside her biases or her prejudicial personal experiences," *United States v. Gonzalez*, 214 F.3d 1109, 1114 (9th Cir. 2000). *See Thompson*, 248 F.3d at 626 (collecting cases).

The district court was within its discretion to find that the prospective juror gave final, unequivocal, and credible assurances that she could set aside any bias she might have stemming from the kidnapping attempt on her daughter and decide the case on the evidence, for three reasons.

First, the unrelatedness of Allen's case and of the kidnapping attempt suggest that any bias was minimal compared with other cases in which the trial judge determined the juror's ability to overcome bias. In *Thompson*, where the ultimate issue was the spuriousness of the employee's claim, the prospective juror manifested a belief, based on his experience as an employer, "that some claims against employers are spurious." *Thompson*, 248 F.3d at 626. The relationship between the case's ultimate issue and juror's prior experience was precise coincidence, thus forming a strong bias or predisposition to find against a certain party. *See also Gonzalez*, 214 F.3d at 1112 (finding implied bias where the juror "had some personal experience that is similar or identical to the fact pattern at issue").

But here the prospective juror's prior experience was wholly unrelated to whether Allen committed the crimes for which he was indicted, much less any specific evidentiary issues such as Allen's state of mind or the identity of kidbot. The prospective juror's predisposition in this case—having personally experienced the attempted molestation of her daughter and the effect it must have had on her daughter, herself, and her entire family—was to find those who commit crimes against children par-

ticularly heinous. This belief has nothing to do with whether any particular defendant is guilty of committing crimes against children. Moreover, the crime here involved child pornography, not kidnapping. As the prospective juror acknowledged, "this crime has nothing to do with that crime." App. A-3 at 140. Neither at voir dire nor on appeal has Allen's counsel been able to explain how the prospective juror's experience related directly to the issues in this trial in such a way that the district court was beyond the bounds of its discretion to find the prospective juror able to weigh the evidence impartially. For this reason, we give particular deference to the district court's finding that the prospective juror would "give due weight to the evidence." *Thompson*, 248 F.3d at 626.

Second, the prospective juror stated finally that she would "suspend judgment until she ha[s] heard all the evidence," *id.*, when she informed the court in her last statement during voir dire that she "would give him the benefit of the doubt until everything is presented." She told the judge what she would do, not that she would merely "try," *Gonzalez*, 214 F.3d at 1111, and we do not find this statement equivocal simply because the question to which it responded was preceded by the judge saying that "[t]here is not anything wrong with [the kidnapping attempt] having an impact." Any impact of the kidnapping attempt, as we have said, went to the prospective juror's predisposition to find certain criminals heinous, not to find certain people criminals, and in any event was related only tangentially to Allen's crimes. Nor, on this cold record, will we overturn the

determination, by the sole judge who was present, that the prospective juror's final, unequivocal assurance was credible. Prior equivocating or wavering is hardly dispositive in assessing credibility, as "[j]urors . . . cannot be expected invariably to express themselves . . . consistently." *Patton*, 467 U.S. at 1039. Indeed, other factors may indicate which of a prospective juror's two opposed sets of statements is more credible, such as which was "least influenced by leading." *Id.* Here the judge found that any statements indicating bias were a result of Allen's counsel "pushing her. You pushed her in another direction." App. A-3 at 143. Furthermore, the paper record does not reveal the relative pushiness of the prospective juror's questioners. Nor does it reveal on which of her opposing sets of statements the prospective juror varied her emphasis, in terms of volume, inflection, or demeanor. A district court's findings concerning actual bias are "based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." *Wainwright v. Witt*, 469 U.S. 412, 428 (1985). Because appellate judges are absent from voir dire, when a prospective juror fails to express herself "carefully or even consistently. . . it is [the trial] judge who is best situated to determine competency to serve impartially." *Patton*, 467 U.S. at 1039.

Finally, the trial judge was in the best position to gauge the prospective juror's ability to "follow[] [his] instructions." *Thompson*, 248 F.3d at 626. Both times the judge instructed the prospective juror on the burden of proof, he elicited a response indicating that she would presume Allen innocent. Moreover, the paper record does not

reveal the relative confidence or tentativeness of these responses, which only the trial judge was able to examine.

We do not doubt that the trial judge's questioning of the prospective juror could have been more explicit in determining whether she would be able to "set aside any opinion [she] might hold," *Patton*, 467 U.S. at 1036, "relinquish her prior beliefs," *Thompson*, 248 F.3d at 626, or "lay aside her biases or her prejudicial personal experiences." *Gonzalez*, 214 F.3d at 1114. Nevertheless—given the relatively minimal bias the prospective juror must have had toward finding this particular defendant guilty, her final and unequivocal statement that she would give Allen the benefit of the doubt until the close of trial, and her demonstrated ability to follow the judge's instructions—we hold that the district court was within its discretion to find that the prospective juror's prior experience would not impede her ability to decide the case fairly. So we find no violation of Allen's rights to due process and to an impartial jury.

## B.   Admission of Chat Log Portions

We move to the admission of the chat log portions where Allen claimed to have molested minors. Even were it error, under Federal Rule of Evidence 403, for the district court to admit them, the error was harmless because the government presented plenty of other evidence cumulative of the proper purposes for which they otherwise may have been admitted—to prove identity, knowledge, and intent. Fed. R. Evid. 404(b); *see also United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006).

To prove identity, for example, the government found a plethora of child pornography on Allen's desktop computer and elsewhere in his room, a log file on the desktop indicating it had been used to transport child pornography to Agent Jensen, explicit advertisements posted by Allen, other chat log portions where Allen discussed trading child pornography, and an abundance of information freely available online linking Allen's identity to the various nicknames he used when engaging in these chats. FBI agents testified to these items at trial and some were admitted into evidence physically.

The government also presented other evidence to prove Allen's knowledge and intent. For example, in other chat log portions, Allen stated "nah im just trading under age porn" or "yeah well I love all little boy porn." Appellant's Br. at 25. And as Allen admits, this evidence was "equally capable of proving" knowledge and intent. *Id.*

Moreover, even were there a remaining harmful effect of admitting Allen's discussion of separate crimes, it was additionally limited when the judge gave an instruction specifically admonishing the jury to consider "evidence of acts of the defendant other than those charged in the indictment . . . only on the questions of the identity of the defendant as the individual who committed the charged acts; and, motive, intent, preparation, knowledge and absence of mistake or accident." Appellee's Br. at 25 (quoting Tr. at 469).

For these reasons, we need not decide whether the danger of unfair prejudice or the needless presentation

of cumulative evidence substantially outweighed the chat log portion's probative value. Even if they did, the prosecution's case would not have been "significantly less persuasive had the improper evidence been excluded." *United States v. Cooper*, 591 F.3d 582, 590 (7th Cir. 2010) (citations omitted).

### III.  CONCLUSION

Allen's claim that the district court improperly denied his for-cause challenge to a prospective juror fails because he provides no argument to convince us that the district court abused its discretion in finding that the prospective juror would act impartially. His claim that the district court improperly admitted his discussion of molesting minors fails because even had it not been admitted, the government presented a mountain of other evidence to convict him. Therefore, we AFFIRM.

WOOD, *Circuit Judge,* dissenting.  I regret that I cannot join my colleagues' assessment of the district court's decision to permit Juror 31 to sit on the jury that heard William Allen's case. As the court's opinion recounts, over and over again Juror 31 candidly admitted that it would be difficult for her to be fair, given her vivid recollection

of the attempted kidnapping of her own daughter some years earlier. Although the majority suggests that this event was unrelated to the child pornography charges involved in Allen's case, *ante* at 6, Juror 31 herself saw a close link between the two situations and properly alerted the judge to her views. On its face, this reveals the kind of inability to be neutral that has always been understood to require the dismissal of a juror. See, *e.g.*, *Reynolds v. United States*, 98 U.S. 145, 155 (1878) (removal of a juror is appropriate if "a juror has formed an opinion as to the issue to be tried"). If a court mistakenly seats a juror who should have been struck for cause, the error is a structural one, and a new trial is required. *Gray v. Mississippi*, 481 U.S. 648 (1987).

Two aspects of the record reinforce my view that Allen is entitled to a new trial under these principles. First, Juror 31 never offered an unequivocal assertion of impartiality. See *Thompson v. Altheimer & Gray*, 248 F.3d 621, 627 (7th Cir. 2001). The best she could manage was the statement that she "would give [Allen] the benefit of the doubt until everything is presented . . . ." "The benefit of the doubt" is not the same thing as impartiality—why should the government want a trial before a juror who has put a thumb on the defendant's side of the scale, if that is what she meant—and if the juror's statement is understood as an attempt at promising to hold the government to its burden of persuasion, it states an impermissibly lenient standard. "The benefit of the doubt," after all, is quite different from "proof beyond a reasonable doubt." *In re Winship*, 397 U.S. 358, 361-64 (1970). Second, Juror 31's offer to give Allen the benefit of

the doubt occurred only after the court had misleadingly told her that "there [was] not anything wrong with [the kidnapping attempt] having an impact" on her perception of Allen's case. But there is everything wrong with that. Her duty, as a juror, was to approach Allen's case without any predisposition. Allen has a right to a jury that did not include people who might, because they consider child abusers especially heinous, vote to convict Allen just because the evidence showed that *someone* was involved with child pornography.

For these reasons, I respectfully dissent.