In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2771

KENNETH MARSHALL,

*Plaintiff-Appellant*,

*v.*

CITY OF CHICAGO, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-02591 — **Thomas M. Durkin**, *Judge.*

ARGUED JUNE 5, 2014 — DECIDED AUGUST 11, 2014

Before WOOD, *Chief Judge*, and EASTERBROOK and KANNE,
*Circuit Judges.*

KANNE, *Circuit Judge.* On April 8, 2010, Chicago police
officers executing a search warrant on a south side residence
discovered a shotgun in one of the bedrooms. Earlier, plaintiff
Kenneth Marshall, who was present in the residence, had
suggested that the bedroom was his. Marshall is a convicted
felon. Accordingly, the officers placed him under arrest and

took him into custody on the theory that he constructively possessed a firearm while it was unlawful for him to do so. In this 42 U.S.C. § 1983 action, Marshall sued the City of Chicago and the law enforcement officers involved in his arrest for damages on the theory that the arrest was not supported by probable cause.

The matter proceeded to trial, and a jury returned a verdict in favor of the defendants. Marshall appeals, challenging two aspects of the jury selection process. First, Marshall argues that the district court abused its discretion by denying his motion to excuse a prospective juror for cause on the grounds that she held a prior belief concerning the possession of firearms by convicted felons, which Marshall believed made her unfit to serve. Second, Marshall argues that the district court erred by refusing to agree to an *ad hoc* alteration of the parties' agreed-upon jury selection procedures for the express purpose of ensuring that the petit jury would include jurors of a certain race. Both of Marshall's arguments are meritless, and we affirm the judgment of the district court.

## I

Marshall's first argument concerns the district court's denial of his motion to excuse a prospective juror for cause. A fair trial requires an impartial trial of fact: a jury capable and willing to decide the case solely on the evidence before it. *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). Accordingly, the *voir dire* process aims to weed out jurors who hold personal biases so strong that their ability to act as a neutral arbiter is compromised. *Id*. If a prospective juror's responses to *voir dire* questioning reveal a bias so

strongly as to convince the judge that the juror cannot render impartial jury service, the judge should dismiss the juror for cause. *United States v. Brodnicki*, 516 F.3d 570, 574 (7th Cir. 2008).

That said, prospective jurors regularly come to *voir dire* carrying a host of preconceptions about what the law does and does not require. The sources for these beliefs are legion, ranging from personal experience, or the anecdotal experience of friends, to popular music[1] and Law and Order reruns. Practically speaking, a preconception about the law cannot warrant *per se* disqualification. If it did, we would be hard pressed to find adequate numbers of qualified jurors.

To account for that reality while also ensuring the protection of each litigant's constitutional rights, we have endorsed a two-step process to assist district judges in determining which prior beliefs warrant for-cause dismissal and which do not. First, the court must determine whether a prospective juror manifests a prior belief that is both material and "contestable," meaning a rational person could question its accuracy. *Thompson v. Altheimer & Gray*, 248 F.3d 621, 627 (7th Cir. 2001). If a prior belief is not material to the issues the juror will be asked to decide, then the existence of that belief prejudices neither party and the juror need not be excused. If a prior belief is uncontestable—again, meaning unquestionably correct—then there simply is no "bias."

---

[1] *See, e.g.*, JAY Z, *99 Problems*, *on* THE BLACK ALBUM (Roc-A-Fella Records 2003), for one rapper-turned-mogul's widely disseminated take on the Fourth Amendment.

Where a prior belief is both material *and* contestable, however, the court must proceed to the second step in the analysis and determine whether the juror is capable of suspending that belief for the duration of the trial. *Thompson*, 248 F.3d at 627. This is usually accomplished by question and answer. The judge looks for an "unwavering affirmation of impartiality," *id*. (quoting *United States v. Garcia*, 936 F.2d 648, 653 (2d Cir. 1991)), without which the juror should be excused. The requirement is satisfied by a juror's affirmation, for example, that she can set aside any opinion she might hold, relinquish her prior beliefs, or lay aside her biases or her prejudicial personal experiences. *United States v. Allen*, 605 F.3d 461, 464–65 (7th Cir. 2010) (internal citations omitted). Ultimately, the decision whether to excuse a juror for cause rests firmly within the discretion of the district judge, and we will reverse only where we find an abuse of such. *Id*. at 464; *see also Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011) (abuse of discretion occurs only where "no reasonable person would agree with the trial court's ruling.").

Judge Durkin did not abuse his discretion, here. That is so for two reasons. First, the prospective juror's alleged bias was immaterial. Second, even if it was material, the prospective juror repeatedly gave unequivocal assurances that she could set aside her personal beliefs and perform her duties fairly and impartially within the confines of this case.

The prospective juror's alleged bias was immaterial because it had no bearing on the issues to be tried. There is no need to reproduce the entirety of the relevant exchange between the court and the prospective juror in this opinion; it suffices to say

the prospective juror was clearly under the impression that her son's parole conditions prohibited *any* person from possessing a firearm in the house. But that is off-point. This case was not about Marshall's parole conditions. This case was about constructive possession. The officers arrested Marshall, a convicted felon, because they believed he was in constructive possession of a firearm found in the residence—which would be a felony regardless of what was contained in the documents governing his parole. The prospective juror expressed no opinion on what does or does not amount to constructive possession of a firearm, nor on when it is or is not a crime for a convicted felon to possess a gun. Her recollection of her son's conditions was therefore immaterial.

That brings us to the second point: Even if the prospective juror *had* carried in some misguided preconceptions about the truly relevant issues, she repeatedly offered Judge Durkin her "unwavering affirmation" that it would not affect her judgment in the instant case:

> THE COURT: Okay. Okay. And the fact that there were conditions, nothing about that experience would affect your ability to be fair in this case?

> PROSPECTIVE JUROR: No.

> *       *       *

> THE COURT: Okay. And, again, that experience involving your son, do you have any thoughts yourself about what conditions of parole should be? And if there's any evidence presented one way or the other about what the conditions are in this case, would the

fact that your son was on parole have any effect on
what you'd do in this case?

PROSPECTIVE JUROR: No.

*          *          *

THE COURT: Well, I guess the question is, if you read
that—there may be an issue in this case about whether
being in a house where there's a gun may not
necessarily be a violation of parole unless when you're
in that house you actually possess the gun or you
constructively possess it. None of that was an issue for
you when you read these conditions because you don't
keep guns in your house?

PROSPECTIVE JUROR: No.

*          *          *

THE COURT: Okay … the final question I have for you
is the one I asked the other jurors. If you were seated
there at the plaintiff's table or seated with the
defendants, could you be—knowing yourself and your
background and your educational background and
your work experience, could you be fair? Would you
want yourself as a juror if you were seated out here as
one of the parties in the case?

PROSPECTIVE JUROR: (Nodding head.)

THE COURT: The answer is yes?

PROSPECTIVE JUROR: Yes.

These responses unequivocally confirm the juror's ability to
disregard her own prior experience and judge the case on the

basis of the evidence brought before her. If they are true, they preclude a challenge for cause. *Allen*, 605 F.3d at 464–65 (collecting cases). Judge Durkin decided to take the prospective juror at her word, and, as the trial judge, he was in the best position to observe her credibility and demeanor. *United States v. Brodnicki*, 516 F.3d 570, 574 (7th Cir. 2008). Finding no reason to second-guess that decision, we defer to the discretion of the district court.

## II

Marshall's second argument is unusual, and requires some context. The parties agreed, prior to trial, to try the case to a jury of eight, which would be selected from a venire of twenty. The order in which veniremen were called for *voir dire* was randomly assigned, with no knowledge of race, by the clerk's office. As it happened, of the first fourteen veniremen called, none of the twelve whom were not excused for cause were black. At that point, a petit jury of eight (non-black) jurors had been selected. Counsel for Marshall, who is black, noticed that three of the six remaining veniremen were also black, and moved the court to expand the size of the petit jury to ten "in the hope of getting one of the persons of color on the jury." The defendants objected and the court denied Marshall's request. Marshall believes that denial was an abuse of—or, more specifically, a "failure to exercise"—discretion.

"The process of empaneling a jury is firmly entrusted to the sound discretion of the trial judge and will not be disturbed absent an abuse of this discretion." *United States v. Beasley*, 48 F.3d 262, 266 (7th Cir. 1995) (quoting *United States v. Rubin*, 37 F.3d 49, 54 (2d Cir. 1994)). There was no abuse of discretion

here. But even quoting the standard of review is getting ahead of ourselves. Marshall has suggested no remotely cognizable legal harm to support this argument. It is established that a litigant has no right to a petit jury which contains members of his race or which fairly represents a cross-section of the community. *See Holland v. Illinois*, 493 U.S. 474, 477–78 (1990); *United States v. Hatchett*, 31 F.3d 1411, 1426 (7th Cir. 1994). So how could the district court have erred by failing to ensure that Marshall got one? Marshall did, of course, have a right to a jury *venire* composed of a fair cross-section of the community, *Hatchett*, 31 F.3d at 1426, but he is not challenging the composition of the venire. He also had a right to see that no state actor intentionally excluded any person from the petit jury on account of their race, *Batson v. Kentucky*, 476 U.S. 79 (1986), but, again, Marshall is not claiming that any state actor acted in such a way. In short, it is hard to see the legal basis for Marshall's motion, let alone any reason why the district court's failure to grant it might amount to an abuse of discretion.

Marshall attempts to side-step this problem by framing the district court's denial of his motion as a "failure to exercise" discretion. *Munoz-Pacheco v. Holder*, 673 F.3d 741, 745 (7th Cir. 2012) ("Failure to exercise discretion is not exercising discretion; it is making a legal mistake."). That is not what happened. The denial of a motion is just as much an exercise of discretion as the granting of a motion; were it otherwise, we would have to reverse every time a trial motion was denied.

For that matter, we would have been faced with a difficult constitutional question if the district court *had* granted Marshall's motion. Marshall openly asked the court to be "race

conscious" in jury selection—specifically, to expand the size of the jury beyond what the parties originally agreed for the express purpose of increasing the chances that Marshall would try his case to at least one black juror. But "the Constitution prohibits all forms of purposeful racial discrimination in the selection of jurors." *Batson*, 476 U.S. at 88. At least one court has held that the principle of *Batson* extends to cover the facts before us:

> In sum, we find that the wrongful *inclusion* of a juror on account of race should be treated the same as the wrongful *exclusion* of a prospective juror on account of race. Each situation violates the constitutional command that jurors be selected pursuant to criteria that do not take race into account, each deprives a defendant of a jury that has been "indifferently chosen" in terms of race, and each involves the exercise of judicial power in support of a process in which race becomes dispositive in terms of who can serve on a jury.

*Pellegrino v. AMPCO System Parking*, 486 Mich. 330, 347–348 (2010) (emphasis original). We need not decide whether we agree with the Michigan Supreme Court's conclusion, but we can confidently say that we would have been more troubled by the district court's grant of Marshall's motion than we are by its denial.

In conclusion, each of Marshall's arguments is meritless. The district court did not abuse its discretion by refusing to remove the prospective juror for cause, nor did it do so by denying Marshall's motion to adjust the agreed-upon size of the petit jury upwards for the explicit purpose of making more

room for jurors of a particular race. The judgment of the district court is AFFIRMED.