In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 23-1307

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHRISTOPHER HILL,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. 4:20-cr-00017 — **Tanya Walton Pratt,** *Judge.*

_____

ARGUED MAY 28, 2025 — DECIDED SEPTEMBER 2, 2025

_____

Before RIPPLE, ST. EVE, and KOLAR, *Circuit Judges*.

KOLAR, *Circuit Judge*. Christopher Hill appeals from his
conviction for dealing methamphetamine on the basis that the
jury who decided his case was not impartial. At the end of
voir dire, two prospective jurors were questioned, both of
whom had familial connections to law enforcement. Hill's
motion to strike one—Juror 53—was granted but his motion
to strike the other—Juror 55—was denied. Given the

difference in answers from the prospective jurors, the unequivocal statement from Juror 55 that she would listen to the evidence and be impartial, and the deference we give to a district judge making credibility determinations, we affirm Hill's conviction.

## I. Facts

Christopher Hill was facing charges for dealing methamphetamine. In October 2020, the FBI received information from the Jeffersonville, Indiana Police Department that Hill was selling drugs in the Clark County area and the two law enforcement agencies used a confidential informant to buy drugs from Hill. Hill agreed to sell four ounces of methamphetamine for $1,500. As Hill drove from his residence to the agreed-upon meeting place, Jeffersonville officers stopped and arrested him. During the arrest, two baggies containing about 100 grams (or about three and a half ounces) of methamphetamine fell out of Hill's pocket. Hill stated that he used methamphetamine, and the drugs were for his personal use. Law enforcement recovered a handgun, other drugs, and cash from Hill's car and residence. Hill was charged four days later with possession with intent to distribute 50 grams or more of methamphetamine.

Hill's case proceeded to a jury trial. The district court conducted voir dire by questioning potential jurors in groups and had moved through two groups before reaching the prospective jurors at issue in this appeal. Other prospective jurors had been struck for cause and the parties had also exercised peremptory strikes. When Jurors 53 and 55 were questioned, only one juror was still needed and an alternate juror could have been impaneled.

Both Jurors 53 and 55 had family connections to law enforcement. Juror 53 was previously married to a Clark County Sheriff's officer for 15 years, and Juror 55 had one son who was a state trooper and another son who was training to become a police officer.

Juror 55 said initially that she thought having two sons in law enforcement would affect her ability to be a fair and impartial juror because she "worr[ied] about [her] son every single night he goes to work. The majority of [his] arrests are drugs and alcohol." The district court acknowledged Juror 55's concern for her children's safety but noted "that doesn't have anything to do with your ability to be a fair and impartial juror." The judge instructed both prospective jurors that a juror's responsibility was to listen to the testimony of a witness, determine whether the testimony was credible, and then make a decision based on the evidence and the law. When the judge asked whether the two prospective jurors could decide solely based on the testimony and evidence that came from the witness stand, Juror 55 said, "I could try."

The questioning did not end there. The judge asked if Juror 55 could give law enforcement officers' testimony the same weight as the testimony of any other witness. Juror 55 answered affirmatively, saying "I think so, yes." Upon questioning from the defense counsel, she acknowledged that she "somewhat" shared a concern about whether she could give Hill a "fair shake" but said, "I don't think I would favor with the police officer. I mean, I would have to listen to the evidence[.]" And when asked whether she would "discount" the questioning of a police officer by the defense, she replied, "Not necessarily, no."

As we will discuss in more detail below, the questioning of Juror 55 stood in contrast to the questioning of Juror 53, the other prospective juror. Juror 53 stated that she felt she "would side with the police officers" and had concerns that she "might ... feel as though the police officer was doing their job and possibly be impartial [sic] because of that." Juror 53 only repeated that she "would try" to follow an instruction not to give a law enforcement officer's testimony greater weight. She admitted that she was hesitant about whether she could be fair and impartial to Hill. Juror 53 did not make any statements about listening to the evidence before she made a decision about a law enforcement officer's credibility as a witness.

The defense moved to strike Jurors 53 and 55, and the district court responded with a split decision:

> Lawyers, I'm going to grant the motion to strike number 53 for cause, and I'm going to deny the motion to strike number 55. Number 55 did tell me that, when I asked her, "Do you feel you could give—might give more or less weight to the testimony of a law enforcement witness as opposed to a civilian witness," and I asked her specifically would she be able to judge the credibility of a law enforcement officer the same as any other witness, and she said, "I think so, yes."

> She also said that she would have to hear the testimony—again, which is the correct answer—before she could determine the credibility of a witness. So I'm going to deny your motion for cause on 55.

Juror 53 was excused and Juror 55 sat. After the presentation of evidence, the jury found Hill guilty of possession with

intent to distribute. Hill was sentenced to 188 months of imprisonment, or about 15 and a half years.

Hill appealed his conviction. The sole issue on appeal is whether Hill's constitutional right to an impartial jury was violated.

## II. Discussion

A person standing trial for criminal charges is entitled to an impartial jury by both the Sixth Amendment and the Fifth Amendment's promise of due process. *United States v. Torres-Chavez*, 744 F.3d 988, 997 (7th Cir. 2014); *United States v. Allen*, 605 F.3d 461, 464 (7th Cir. 2010). We review for abuse of discretion the district court's denial of a motion to disqualify a juror for cause. *United States v. Sheffler*, 125 F.4th 814, 828 (7th Cir. 2025). We give this deference because the district judge can see and hear the prospective jurors as they are questioned and pick up on non-verbal cues that are lost when reading a transcript. *United States v. Granger*, 70 F.4th 408, 411 (7th Cir. 2023). Our focus is on whether the jury that actually sat and deliberated was impartial. *United States v. Lott*, 442 F.3d 981, 984 (7th Cir. 2006).

"The requirement of an impartial jury is met when 'the prospective juror has given final, unequivocal assurances, deemed credible by the judge, that for purposes of deciding the case, she can set aside any opinion she might hold, relinquish her prior beliefs, or lay aside her biases or her prejudicial personal experiences.'" *United States v. Taylor*, 777 F.3d 434, 441 (7th Cir. 2015) (quoting *Allen*, 605 F.3d at 464–65). The entirety of the prospective juror's questioning is relevant to determining whether she made sufficient assurances that she could act impartially. *Granger*, 70 F.4th at 411–12. The district

court, and we on review, are both interpreting the prospective juror's statements—does she evince a bias, does she say she can put that bias aside—as well as judging the credibility of her statements—is she telling the truth? *See Thompson v. Altheimer & Gray*, 248 F.3d 621, 625 (7th Cir. 2001) (drawing a distinction between credibility finding and interpreting whether a juror's statement "manifest[s] a degree of bias such that the judge abused his discretion in failing to strike her for cause").

Juror 55 acknowledged that her sons' careers might affect her partiality during the trial. Particularly relevant here, Juror 55 was concerned about the danger posed to her sons by arresting people for drug and alcohol-related offenses, which likely made her extra sensitive to the allegations of drug-dealing in this case. That is potential bias—Juror 55's concerns may have resulted in a preference for the police officers who were making the arrest or an antagonism toward someone who was accused of dealing drugs. But the relevant inquiry is not just whether Juror 55 had a prior, material belief or prejudice, but also whether she could "lay aside her biases or her prejudicial personal experiences and render a fair and impartial verdict." *Thompson*, 248 F.3d at 627 (internal quotation omitted).

Juror 55 made affirmative statements that she could decide the case based solely on the evidence at trial and that she would consider the testimony of a law enforcement officer the same as she would any other witness. The judge asked whether Juror 55 could "listen to the testimony and the evidence that comes from the witness stand and base a decision solely on that," and Juror 55 responded, "I could try." That statement standing alone might be insufficient, *see Thompson*,

248 F.3d at 626, but Juror 55 also nodded in answer to the question of whether she could "render a verdict solely on the evidence presented at the trial" and "set aside any personal beliefs or opinions." What's more, Juror 55 responded, "I think so, yes," to the question of whether she could give law enforcement witness testimony the same weight as any other witness. Prefacing an affirmative statement with "I think" or "I believe" does not automatically make it equivocal. *See United States v. Gonzalez*, 214 F.3d 1109, 1114 & n.5 (9th Cir. 2000) (juror's response, "I believe so, yes" communicated "her ability to serve impartially"); *see also United States v. Beasley*, 48 F.3d 262, 267–68 (7th Cir. 1995) (accepting without discussion "I don't think so" as unequivocal assurance of impartiality).

And when pushed by defense counsel about how she would approach the testimony of a police officer, Juror 55 said, "I don't think I would favor with the police officer. I mean, I would have to listen to the evidence and—[.]" This statement that she would listen to the evidence before coming to a decision on the credibility of a police officer, offered without prompting, is a strong indicator that Juror 55 would be able to set aside her personal biases and prejudices. *See Allen*, 605 F.3d at 465–66 (juror's affirmative statement that she could give defendant "the benefit of the doubt" supports conclusion she could be impartial). Looking at the entire interaction, we cannot say that the district court abused its discretion in finding that Juror 55 made credible unequivocal assurances that she could set aside her biases and serve as an impartial juror.

Hill also points out that Juror 53 and Juror 55 both had familial connections to law enforcement and expressed

reservations about their ability to be impartial, but only Juror 53 was excused for cause. He argues that there was no meaningful difference between the two prospective jurors, and it was an abuse of the trial court's discretion to excuse one and not the other. We disagree.

First, Juror 53 knew one of the officers who was involved in the case and who testified at trial. In the context of juror selection, we use the term "implied bias" to denote situations in which there is a close relationship between the prospective juror and someone or something in the case and so a court should "err[] on the side of caution" and excuse the prospective juror. *United States v. Polichemi*, 219 F.3d 698, 704 (7th Cir. 2000). Juror 53's direct connection to an officer testifying in the case is a classic example of implied bias.

In addition, Juror 53 gave different answers than Juror 55. Juror 53's initial statement of bias was specifically about witness credibility and preference—she said she felt she would side with the police officers and would be more likely to believe a police officer. In contrast, Juror 55's initial statement about bias was couched in terms of her concern about her sons' safety. And later, unlike Juror 55's "I think so, yes" response, Juror 53 only answered, "I would try," when asked if she could give equal weight to law enforcement testimony and the testimony of other witnesses. Lastly, Juror 53 never affirmatively said that she would listen to the evidence before coming to a conclusion, as Juror 55 did in response to defense counsel's questioning. Based on the "cold transcript" of the hearing, *Skilling v. United States*, 561 U.S. 358, 386 (2010), we can identify significant differences that explain why Juror 53 would be excused when Juror 55 was not. And this is without access to intonation, physical gestures, and other cues

essential to determining whether a prospective juror is making a credible assurance of impartiality. It was not an abuse of discretion to excuse Juror 53 for cause and deny the motion as to Juror 55.

## III. Conclusion

We see no abuse of discretion in the district court's decision to sit Juror 55 and therefore AFFIRM.