# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP2813-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Respondent, |
| | v. |
| | Jeffrey P. Lepsch, |
| | Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | March 31, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 9, 2016 |

SOURCE OF APPEAL:

| | |
|---|---|
| COURT: | Circuit |
| COUNTY: | La Crosse |
| JUDGE: | Ramona A. Gonzalez |

JUSTICES:

| | |
|---|---|
| CONCURRED: | ABRAHAMSON, J., joined by BRADLEY, A. W., J. (except for the first sentence of ¶90) concur (Opinion filed). |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there was a brief by *Steven W. Zaleski*, and *Zaleski Law Firm,* Madison, and oral argument by *Steven W. Zaleski.*

For the plaintiff-respondent the cause was argued by *Sara Lynn Shaeffer*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

**2017 WI 27**

No. 2014AP2813-CR
(L.C. No. 2012CF691)

STATE OF WISCONSIN      :      IN SUPREME COURT

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

**State of Wisconsin,**

     **Plaintiff-Respondent,**

     **v.**

**Jeffrey P. Lepsch,**

     **Defendant-Appellant-Petitioner.**

**FILED**

**MAR 31, 2017**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1      ANNETTE KINGSLAND ZIEGLER, J.    This is a review of an unpublished decision of the court of appeals, State v. Lepsch, No. 2014AP2813-CR, unpublished slip op. (Wis. Ct. App. Nov. 19, 2015) (per curiam), which affirmed the La Crosse County circuit court's[1] judgment of conviction of defendant Jeffrey Lepsch ("Lepsch") and order denying Lepsch's motion for postconviction relief.

---

[1] The Honorable Ramona A. Gonzalez presided.

¶2   A jury found Lepsch guilty of killing two individuals during an armed robbery in La Crosse, Wisconsin.[2]   Lepsch was sentenced to consecutive life terms in prison.   Before this court, Lepsch argues he is entitled to a new trial due to alleged errors pertaining to jury selection and the jury Lepsch received.

¶3   More specifically, Lepsch presents the following arguments: (1) Lepsch's right to a trial by an impartial jury was violated because certain of the jurors in his case were subjectively and objectively biased; (2) Lepsch's right to due process of law was violated because of circumstances that created the likelihood or appearance of bias and because of alleged deficiencies in the circuit court's investigation into and mitigation of these circumstances; (3) Lepsch's right to be present at a critical stage of his proceedings, right to a public trial, and right to a jury properly sworn to be impartial were violated because the La Crosse County Clerk of Courts administered the oath to the prospective jurors in Lepsch's case

---

[2] Lepsch was convicted of two counts of first-degree intentional homicide, contrary to Wis. Stat. § 940.01(1)(a) (2011-12), one count of armed robbery with use of force, contrary to Wis. Stat. § 943.32(2) (2011-12), and one count of possession of a firearm by a felon, contrary to 941.29(2)(a) (2011-12).   All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

outside of Lepsch's presence;[3] and (4) Lepsch's right to receive the proper number of peremptory strikes, to full use of those strikes, and to have biased jurors removed for cause was violated by the circuit court. Lepsch explains that "all of the issues litigated in this appeal have been raised via a claim of ineffective assistance of counsel."[4]

¶4 We conclude that each of Lepsch's claims fails, and that he is not entitled to a new trial. Consequently, we affirm the decision of the court of appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶5 On September 15, 2012, police were dispatched to a store in La Crosse, WI. The bodies of P.P. and A.P had been discovered by a family member at the store; each had been shot in the head. There were also signs of a robbery.

¶6 On October 10, 2012, Lepsch was charged with two counts of first-degree intentional homicide, contrary to Wis. Stat. § 940.01(1)(a). The following day, an amended complaint was filed additionally charging Lepsch with armed robbery with use of force, contrary to Wis. Stat. § 943.32(1)(a) and (2), and

---

[3] As will be explained, this oath should not be confused with the oath administered to the jury Lepsch ultimately received prior to the commencement of his trial. That is, Lepsch is challenging the administration of the oath to the prospective jurors prior to questioning of the prospective jurors by the court, the State, and Lepsch's counsel; he does not dispute that the jury chosen was thereafter properly sworn by a clerk in Lepsch's presence in court at the start of his trial.

[4] But see infra n.5.

possession of a firearm by a felon, contrary to 941.29(2)(a). On October 25, 2012, at Lepsch's arraignment, Lepsch stood mute and the circuit court entered pleas of not guilty on his behalf. A few months later, the case was set for a jury trial.

¶7 Jury selection in this case proceeded as follows. Prior to the date of jury selection, prospective jurors completed paper questionnaires asking dozens of questions on subjects ranging from the jurors' favorite television shows to the jurors' views on various legal propositions. These questionnaires required a signature under the following statement: "I affirm, under penalty of perjury, that I have given complete and honest answers to all of the questions above." The parties agreed to excuse about two dozen prospective jurors at least in part on the basis of the answers provided. On July 23, 2013, jury selection itself occurred. Prospective jurors gathered in the "jury assembly room," where they were sworn by the La Crosse County Clerk of Courts. The parties seem to agree that neither Lepsch nor his attorneys were present when the oath was administered.

¶8 Certain prospective jurors were then brought into the courtroom for individual questioning in the presence of the court, Lepsch, and his attorneys. A number of prospective jurors were excused. Next, remaining prospective jurors were brought into the courtroom as a group and questioned in the presence of the court, Lepsch, and his attorneys. Finally, Lepsch and the State were each given six peremptory strikes and a panel of 15 jurors was selected.

4

¶9 From Wednesday, July 24, 2013, to Friday, July 26, 2013, and from Monday, July 29, 2013, to Tuesday, July 30, 2013, Lepsch was tried before the jury. There is no dispute that this jury was properly sworn by a clerk in Lepsch's presence in court at the start of his trial. On July 30, 2013, the jury returned a verdict of guilty as to all counts charged. On September 3, 2013, the circuit court sentenced Lepsch to two life sentences without extended supervision for the homicide charges, a 40-year term of imprisonment for the armed robbery charge, and a 10-year term of imprisonment for the possession of a firearm by a felon charge, all to be served consecutively. On September 4, 2013, the judgment of conviction was entered.

¶10 On November 25, 2013, Lepsch filed a notice of intent to seek postconviction relief, and on July 15, 2014, Lepsch filed a postconviction motion for a new trial. In his motion he challenged the convictions asserting that he received ineffective assistance of counsel. On September 4, 2014, the circuit court held a Machner hearing on Lepsch's motion. See State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). On November 14, 2014, the circuit court denied Lepsch's motion.

¶11 On December 2, 2014, Lepsch filed a notice of appeal. On November 19, 2015, the court of appeals affirmed the circuit court's judgment of conviction and order denying postconviction relief in an unpublished, per curiam opinion. Lepsch, unpublished slip op., ¶1.

5

¶12 On December 4, 2015, Lepsch filed a petition for review in this court. On May 11, 2016, this court granted the petition.

## II. STANDARD OF REVIEW

¶13 "A claim of ineffective assistance of counsel is a mixed question of fact and law." State v. Ortiz-Mondragon, 2015 WI 73, ¶30, 364 Wis. 2d 1, 866 N.W.2d 717 (quoting State v. Carter, 2010 WI 40, ¶19, 324 Wis. 2d 640, 782 N.W.2d 695). We review the circuit court's findings of fact under a clearly erroneous standard, but independently determine the legal question of whether counsel's assistance was ineffective. Id. (quoting Carter, 324 Wis. 2d 640, ¶19).

¶14 We "review[] constitutional questions, both state and federal, de novo." State v. Lagrone, 2016 WI 26, ¶18, 368 Wis. 2d 1, 878 N.W.2d 636 (quoting State v. Schaefer, 2008 WI 25, ¶17, 308 Wis. 2d 279, 746 N.W.2d 457).

¶15 Other applicable standards will be discussed below.

## III. ANALYSIS

¶16 Lepsch's appeal focuses on his ineffective assistance of counsel claim.[5] Lepsch possesses state and federal

---

[5] The nature of the arguments Lepsch raises on appeal is often unclear. Although Lepsch raises numerous constitutional claims in his brief, it is not until page 48 of that brief that Lepsch states, "Due to trial counsel's failure to preserve the issues at trial, all of the issues litigated in this appeal have been raised via a claim of ineffective assistance of counsel." Elsewhere in his brief, however, Lepsch appears to discuss issues outside of the ineffective-assistance framework. "We cannot serve as both advocate and court," and we will not develop Lepsch's claims for him. Cemetery Servs., Inc. v.

(continued)

6

constitutional rights to the effective assistance of counsel.

U.S. Const. amends. VI, XIV; Wis. Const. art. I, § 7;[6] <u>Strickland</u>

---

<u>Wisconsin Dep't of Regulation & Licensing</u>, 221 Wis. 2d 817, 831, 586 N.W.2d 191 (Ct. App. 1998). Except where otherwise noted——namely, where Lepsch has developed an independent claim with sufficient clarity——we do not address claims arising outside of the ineffective assistance context.

[6] The Sixth Amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. The Fourteenth Amendment to the United States Constitution provides in part:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1. Article I, section 7 of the Wisconsin Constitution provides:

> In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of

(continued)

7

v. Washington, 466 U.S. 668, 686 (1984); State v. Starks, 2013 WI 69, ¶54, 349 Wis. 2d 274, 833 N.W.2d 146.  "The standard for determining whether counsel's assistance is effective under the Wisconsin Constitution is identical to that under the federal Constitution."  State v. Thiel, 2003 WI 111, ¶18 n.7, 264 Wis. 2d 571, 665 N.W.2d 305.  "First, the defendant must prove that counsel's performance was deficient.  Second, if counsel's performance was deficient, the defendant must prove that the deficiency prejudiced the defense."  Carter, 324 Wis. 2d 640, ¶21 (citation omitted).  With regard to the first part of this test, "[c]ounsel's conduct is constitutionally deficient if it falls below an objective standard of reasonableness."  Thiel, 264 Wis. 2d 571, ¶19 (citing Strickland, 466 U.S. at 688).  With regard to the second part of this test, "the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Id., ¶20 (quoting Strickland, 466 U.S. at 694).

A.  Impartial Jury

---

witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

Wis. Const. art. I, § 7.

¶17 In Lepsch's first ineffective assistance of counsel claim, Lepsch argues his attorneys were ineffective in failing to raise jury bias issues during jury selection. As a result, he claims nine of the jurors in his case were biased, which denied him his right to an impartial jury under the Wisconsin and federal constitutions. Lepsch bases this challenge on various answers given in response to four questions on the pre-trial questionnaires completed by the prospective jurors. He argues that his attorneys were ineffective for "failing to sufficiently examine and challenge prospective jurors for cause."

¶18 We now present the four questions at issue. Question 30 of the questionnaire reads as follows: "You will be hearing testimony from several police officers in this case. Do you think you would give police officers more credibility, less credibility or the same amount of credibility as other witnesses who were not police officers?" The question contained spaces for the prospective juror to check "more credibility," "less credibility," or "the same credibility," and asked the prospective juror to explain his or her answer. Seven of the twelve jurors who sat on Lepsch's case answered "more credibility."[7]

¶19 Question 35 of the questionnaire contained the following questions, among others: (1) "Have you ever expressed

---

[7] These seven jurors were C.R., N.N., J.A., P.H., L.K., D.M., and R.F.

the opinion that Mr. Lepsch was guilty?"; (2) "Do you have any feelings at this time that you have made up your mind as to Mr. Lepsch's guilt?"; and (3) "IF YES, would you have any difficulty putting these feelings out of your mind if you were chosen to be a juror?". Each question was followed by spaces for the prospective juror to check "Yes" or "No." Four of the twelve jurors on Lepsch's jury answered that they had expressed the opinion that Mr. Lepsch was guilty.[8] Three of these same four jurors answered that they "ha[d] . . . feelings" that they had made up their mind as to Lepsch's guilt.[9] Each of these three then answered that they would not have any difficulty putting the feelings out of their mind if they were chosen to be a juror.

¶20 Question 32 asked, "Do you have any problem with the legal proposition that a defendant must be presumed innocent unless and until the prosecution can prove he or she is guilty?" And Question 34 asked a related question: "Do you think if the state goes to the trouble of bringing someone to trial, the person is probably guilty?" Both questions left spaces for the prospective juror to check "Yes" or "No," and both questions asked for the prospective juror to explain his or her answer. One juror answered "No" to Question 32 (regarding the presumption of innocence) but then explained his answer as

---

[8] These four jurors were J.T., J.A., M.F., and L.K.

[9] These three jurors were J.T., J.A., and M.F.

10

follows: "In general, no. But I do not believe that this should be the case 100% of the time. I believe that there are cases in which there is immediate & overwhelming evidence (i.e. physical evidence, audio/video evidence, confessions, etc.) should be presumed guilty until trial [sic]." The same juror answered Question 34 (relating to whether a person brought to trial is probably guilty) as follows: "Probably? Yes. Definitely? Not necessarily. I would hope that the courts would not bring someone in just so they have someone to try. I would hope there would at least be a fair amount of evidence or cause before bringing someone in."[10]

¶21 Before addressing the deficiency and prejudice prongs of Lepsch's ineffective assistance of counsel claim, we set forth the law governing juror bias. "The United States Constitution and Wisconsin's Constitution guarantee an accused an impartial jury." State v. Mendoza, 227 Wis. 2d 838, 847, 596 N.W.2d 736 (1999) (citing U.S. Const. amends. VI and XIV; Wis. Const., art. I, § 7).[11] "To be impartial, a juror must be indifferent and capable of basing his or her verdict upon the evidence developed at trial." State v. Faucher, 227 Wis. 2d 700, 715, 596 N.W.2d 770 (1999) (citing Irvin v. Dowd, 366 U.S. 717, 722 (1961)).

---

[10] This juror was C.R.

[11] See supra n.6.

11

¶22 "Reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality, for that judge's appraisal is ordinarily influenced by a host of factors impossible to capture fully in the record——among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty." Skilling v. United States, 561 U.S. 358, 386 (2010). "Prospective jurors are presumed impartial" and Lepsch "bears the burden of rebutting this presumption and proving bias." State v. Funk, 2011 WI 62, ¶31, 335 Wis. 2d 369, 799 N.W.2d 421 (quoting State v. Louis, 156 Wis. 2d 470, 478, 457 N.W.2d 484 (1990)). "We have recognized three types of bias: (1) statutory bias; (2) subjective bias; and (3) objective bias." State v. Smith, 2006 WI 74, ¶19, 291 Wis. 2d 569, 716 N.W.2d 482 (citing Faucher, 227 Wis. 2d at 716). Lepsch argues that the jurors he challenged were subjectively and objectively biased.

¶23 Subjective bias refers to "bias that is revealed through the words and the demeanor of the prospective juror." Faucher, 227 Wis. 2d at 717. "[T]he circuit court sits in a superior position to assess the demeanor and disposition of prospective jurors, and thus, whether they are subjectively biased." Id. at 718. Accordingly, "we will uphold the circuit court's factual finding that a prospective juror is or is not subjectively biased unless it is clearly erroneous." Id.

¶24 The concept of objective bias relates to the question of "whether [a] reasonable person in the individual prospective juror's position could be impartial." Id.

12

> Objective bias . . . is a mixed question of fact and law. "[A] circuit court's findings regarding the facts and circumstances surrounding voir dire and the case will be upheld unless they are clearly erroneous. Whether those facts fulfill the legal standard of objective bias is a question of law." Although we do not defer to a circuit court's decision on a question of law, where the factual and legal determinations are intertwined as they are in determining objective bias, we give weight to the circuit court's legal conclusion. We have said that we will reverse a circuit court's determination in regard to objective bias "only if as a matter of law a reasonable judge could not have reached such a conclusion."

Funk, 335 Wis. 2d 369, ¶30 (citations omitted) (quoting Faucher, 227 Wis. 2d at 720-21).

¶25 In order to succeed on his ineffective assistance of counsel claim, Lepsch must prove that his attorneys acted deficiently during jury selection and that he was prejudiced by this performance. Our review demonstrates that none of the jurors who sat on Lepsch's case were biased, either subjectively or objectively, and that Lepsch was therefore not prejudiced by the performance of his attorneys, even if the performance was deficient in some respect (a question we need not decide).

¶26 The circuit court below explained, in denying Lepsch's postconviction motion:

> From the court's position of being able to best determine juror bias, the court is absolutely convinced that each juror was able to put any potential biases out of their minds. The court is absolutely certain that Lepsch was tried by a fair and impartial jury who decided the case based solely on the evidence before them. The court is unequivocally convinced that the jury agonized over its decision and gave Lepsch every benefit of the doubt.

13

¶27 Lepsch cannot establish ineffective assistance because he cannot prove either objective or subjective bias. Seven of Lepsch's jurors stated in the questionnaire that they would give police officers more credibility than witnesses who were not police officers.[12] Five of these jurors, however, were specifically questioned on that answer, and the lawyers and/or the court examined this belief and ensured that the jurors could decide the case impartially. To take just one example,[13] the court asked R.F. the following with regard to law enforcement officers:

> [T]he question is, once they are sitting in the seat you're sitting in and they are a witness, can you judge them, the credibility, what they say based upon those things that we as human beings use as intangibles to determine people's credibility and not just cut them slack because they happen to be law enforcement?

R.F. responded, "Yes, Your Honor." The court then confirmed, "So you can -- you can look at them as you would any other witness?" R.F. responded, "Yes." Given our deference to the circuit court on these types of questions, we will not displace

---

[12] Lepsch argues that law enforcement testimony was a central part of the State's case against him. We can assume that this is true for purposes of this appeal.

[13] We do not provide transcript excerpts for the questioning of each juror. However, questioning regarding the jurors' views on police credibility and the jurors' answers to the questions asked were substantially similar for purposes relevant to the issues in this case.

14

the circuit court's conclusion that these jurors were not biased when they sat on Lepsch's case.

¶28 J.A. and D.M. are the two jurors who were not specifically questioned on this point. However, other aspects of the jury selection process provide support for the circuit court's rejection of Lepsch's claims of bias. Both J.A. and D.M. checked "No" on their questionnaires next to the question, "Is there any reason why you could not be impartial in this case?" And D.M. stated elsewhere on his questionnaire, "I believe in facts, not people." See, e.g., Griffin v. Bell, 694 F.3d 817, 823-24) (7th Cir. 2012) ("[Juror] Carel, of course, never said that she could not be fair. At most, she indicated that her first inclination, if faced with conflicting stories from a police officer and a fourteen-year-old boy, would 'most likely' be to believe the officer. . . . In this case, although [juror] Carel expressed an initial inclination that police officers are more credible than teenagers, she never expressed an irrational or unshakeable bias that indicated an inability or unwillingness to faithfully and impartially apply the law."); United States v. Ricketts, 146 F.3d 492, 496 (7th Cir. 1998) ("In the abstract, it is certainly not unreasonable for an ordinary person to say she would generally tend to believe a prison guard over a prison inmate. But that certainly doesn't mean that in a given case, after hearing sworn testimony under oath and considering all the facts and circumstances, that that same juror would automatically believe a given guard over a

15

given inmate. Generalized questions of the sort asked here are a slim basis upon which to base a challenge for cause.").

¶29 Further, both J.A. and D.M. were present during questioning of the jurors as a group. Given the general tenor of voir dire, the prospective jurors could not have "fail[ed] to recognize that bias in favor of law enforcement officials was inappropriate." United States v. Lancaster, 96 F.3d 734, 742-43 (4th Cir. 1996) (reaching this conclusion in part because the court had inquired about "bias in favor of law enforcement officials resulting from a relationship with a relative or friend in law enforcement"). The defense informed the prospective jurors, "[T]here's no wrong answers, and I want you guys to talk to me. We're after an unbiased jury here, and it's okay to have biases. We all have them." Topics touched on during questioning by the defense were whether the police can make mistakes, whether it is important that law enforcement follow procedures, whether police "ever let bias get in the way of what they're looking for," whether "we tend to trust professionals [including police] a little more than we should sometimes," and how to determine whether a professional such as a policeman "has the right training or experience."

¶30 Moreover, earlier in voir dire, the State explained to the prospective jurors, "both sides want people who are fair, objective," later adding:

> [B]y now you've gotten some pretty good ideas through
> the questionnaires and all the questioning of the kind
> of things we want to know about people. Is there
> anything that anybody hasn't asked and you've just

16

been sitting here waiting, why don't they ask me this because I really shouldn't be on this jury, but nobody's asked me why? Is there anything that we haven't asked at this point, anyone who says, I should not be here; I can't be fair; and we just haven't asked the right question yet?

There was no response. See Lancaster, 96 F.3d at 743 ("Under these circumstances, the district court's final voir dire question——'Ladies and Gentlemen, do you know of any reason, is there anything at all any of you know of that would make it difficult for you to sit as an impartial juror in this case?'—— could not have failed to elicit an affirmative response from any member of the venire harboring a bias in favor of law enforcement officials." (citation omitted)). Again, given the standard of review, we are not in a position to disturb the circuit court's judgment that no bias existed on Lepsch's jury in this regard. Thus, even assuming Lepsch's attorneys should have examined this matter further during jury selection in some way, Lepsch has not proven that he was prejudiced by the performance.

¶31 Lepsch's claims of bias regarding jurors who said they had expressed an opinion on Lepsch's guilt or had made up their mind as to Lepsch's guilt are also unpersuasive. Each of the three jurors who stated "Yes" on their questionnaires when asked, "Do you have any feelings at this time that you have made up your mind as to Mr. Lepsch's guilt?" also stated "No" in response to the question of whether they would have any difficulty putting these feelings out of their minds as jurors. All four who stated they had "ever expressed the opinion that

17

Mr. Lepsch was guilty" were individually questioned in some manner as to whether they could base their decisions on the evidence; each juror verified that he or she could do so. Lepsch has not demonstrated that the circuit court's findings regarding bias should be overturned as to these jurors, and he has not shown prejudice with respect to his attorneys' questioning of these jurors.

¶32 Finally, the juror who qualified his agreement with the presumption of innocence and who agreed that if the State goes to the trouble of bringing someone to trial, the person is probably guilty, was informed that he would be instructed about the presumption of innocence and that he had to "start out with looking as Mr. Lepsch as he is innocent," that he is "innocent as he sits here today." The juror was asked if he was "okay with that principle," and the juror affirmed that he was. Again, we see no prejudice resulting from the questioning of this juror.

¶33 Before proceeding further, we note that Lepsch takes issue with our discussion of the law on juror impartiality, contending that it is contrary to federal law insofar as it does not require a "final, unequivocal" swearing by a juror that he or she can set aside his or her beliefs and opinions and decide the case solely on the evidence. Lepsch relies predominantly on Patton v. Yount, 467 U.S. 1025 (1984), citing a passage explaining that in a "federal habeas corpus case in which the partiality of an individual juror is placed in issue," the question before the reviewing court "is plainly one of

18

historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." Yount, 467 U.S. at 1036.

¶34 We disagree with Lepsch that Supreme Court case law[14] dictates that a bright-line rule be applied in cases involving a defendant's claim he did not receive an impartial jury. First, it is important to consider the context of the single line in Yount cited by Lepsch. The Supreme Court was rejecting, on federal habeas review, the view of the court of appeals below it that "the question whether jurors have opinions that disqualify them is a mixed question of law and fact" such that "the presumption of correctness due a state court's factual findings under" federal habeas review was inapplicable. Id. at 1028-31, 1036. Its focus in that passage was not the definition of the substantive standard, but instead the notion that application of the relevant standard was "not one of mixed law and fact" and that "the statutory presumption of correctness" thus applied to the trial court's determinations. See id. at 1036-38.

---

[14] Lepsch also cites a number of decisions issued by lower federal courts. We are not bound by these decisions. See, e.g., Madison Teachers, Inc. v. Walker, 2014 WI 99, ¶68, 358 Wis. 2d 1, 851 N.W.2d 337 (explaining that the Seventh Circuit's constitutional analysis was not binding on this court); cf. Johnson v. Williams, 568 U.S. ___, 133 S. Ct. 1088, 1098 (2013) ("[T]he views of the federal courts of appeals do not bind the California Supreme Court when it decides a federal constitutional question, and disagreeing with the lower federal courts is not the same as ignoring federal law.").

¶35 And indeed, the <u>Yount</u> Court later restated the applicable inquiry on habeas review as "whether there is fair support in the record for the state courts' conclusion that the jurors here would be impartial," adding,

> Jurors . . . cannot be expected invariably to express themselves carefully or even consistently. Every trial judge understands this, and under our system it is that judge who is best situated to determine competency to serve impartially. <u>The trial judge properly may choose to believe those statements that were the most fully articulated or that appeared to have been least influenced by leading.</u>

<u>Yount</u>, 467 U.S. at 1038-39 (emphasis added). This suggests an amount of leeway inconsistent with the rigid rule proposed by Lepsch. <u>See also</u> <u>id.</u> at 1039-40 ("[I]n the case of alternate juror Pyott, we cannot fault the trial judge for crediting her earliest testimony, in which she said that she could put her opinion aside '[i]f [she] had to,' rather than the later testimony in which defense counsel persuaded her that logically she would need evidence to discard any opinion she might have."); <u>id.</u> at 1039 ("We think that the trial judge's decision to seat [juror] Hrin, despite early ambiguity in his testimony, was confirmed after he initially denied the challenge. Defense counsel sought and obtained permission to resume cross-examination. In response to a question whether [juror] Hrin could set his opinion aside before entering the jury box or would need evidence to change his mind, the juror clearly and forthrightly stated: 'I think I could enter it [the jury box] with a very open mind. I think I could . . . very easily. To

20

say this is a requirement for some of the things you have to do every day.'").

¶36 Recent Supreme Court case law supports our understanding of Yount. In Skilling the Supreme Court explained that "[n]o hard-and-fast formula dictates the necessary depth or breadth of voir dire," following that statement with a quotation from one of its earlier cases: "Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula." Skilling, 561 U.S. at 386 (emphasis added) (quoting United States v. Wood, 299 U.S. 123, 145-46 (1936)). Finally, Lepsch does not direct us to any Supreme Court cases explicitly applying his interpretation of the putative test from Yount. We agree with Lepsch that a prospective juror must be able to "set aside any opinion he might hold and decide the case on the evidence." Yount, 467 U.S. at 1036. But, as a general matter, a circuit court need not use or obtain any magic words in determining whether this requirement has been met.

¶37 In sum, Lepsch has not provided sufficient reason to upset the circuit court's determination that none of the jurors who sat on Lepsch's case were biased, either subjectively or objectively. Thus, even assuming that Lepsch's counsel performed deficiently at voir dire, Lepsch has failed to demonstrate that he was prejudiced by this performance and his ineffective assistance of counsel claim must be rejected. C.f.,

21

e.g., Peterson v. State, 154 So.3d 275, 282 (Fla. 2014) (per curiam) ("Peterson cannot demonstrate prejudice because no biased juror sat on his jury."); State v. Erickson, 227 Wis. 2d 758, 774, 596 N.W.2d 749 (1999) ("more than rank speculation" is needed "to satisfy the prejudice prong").

¶38 Lepsch also maintains that his right to due process of law was denied because of "circumstances that create[d] the 'likelihood or the appearance of bias,'" Peters v. Kiff, 407 U.S. 493, 502 (1972) (plurality opinion), and because the circuit court "fail[ed] to conduct a sufficient inquiry regarding such circumstances." Lepsch's claim is stated in broad terms and without adequate legal development, and we reject it. As the circuit court explained:

> The court and both parties were aware that this case was going to be well-known in the community long before the trial ever began. For that exact reason, the court took extra precaution to ensure an impartial jury, beyond what it would do for most jury trials. The extensive questionnaire sent out to the jurors was used to eliminate 24 jurors who exhibited a bias indicating they could not sit as objective jurors, before they ever reported for jury duty and by the agreement of both parties. After those potential jurors had been eliminated, the potential jurors who reported were brought into the courtroom one at a time. They were questioned by the court and both parties regarding pretrial publicity, their ability to decide the case only on the evidence presented, and about any potentially problematic answers on their questionnaire. More jurors were excused during this process. Then voir dire began as it normally would.

(Footnote omitted) (citations omitted.) The circuit court's careful administration of jury selection and the verbal in-person questioning that took place cured any possibility of the

"likelihood or the appearance of bias" at least as outlined in the arguments Lepsch has made.[15] We conclude that he was not denied due process.[16]

B. Administration of the Oath to the Prospective Jurors

¶39 Next, Lepsch argues that the swearing of prospective jurors outside of his presence by the La Crosse County Clerk of Courts violated his rights to be present at all critical stages of a criminal proceeding, to receive a public trial, and to receive a trial by an impartial jury. He contends that his trial attorneys were ineffective in failing "to ensure that the

---

[15] Lepsch makes passing reference to certain answers given by his alternate jurors. These jurors were excused prior to deliberation. Lepsch does not explain why these jurors are relevant to the inquiry, and we will not construct an argument for him. See Cemetery Servs., Inc., 221 Wis. 2d at 831.

[16] It is unclear whether Lepsch means to discuss this claim in the context of ineffective assistance of counsel. He does not specifically do so (except for his general statement near the end of his brief that "all of the issues litigated in this appeal have been raised via a claim of ineffective assistance of counsel"). For example, Lepsch states, "[I]rrespective of trial counsel's performance and obligations, the trial court had an independent obligation to ensure that the voir dire in the case was conducted according to 6th Amendment principles . . . ." In any event, if Lepsch is arguing his lawyers should have objected and raised the arguments Lepsch raises now, we conclude that, even assuming deficient performance of some kind, Lepsch was not prejudiced by it because there was no denial of due process.

trial court properly administered the oath to the jury venire in Lepsch's presence."[17]

¶40 To be clear, Lepsch does not dispute that the jury he ultimately received was properly sworn by a clerk in Lepsch's presence in court at the start of his trial. See Wis. Stat. § 756.08 (2013-14). Instead, he is asserting alleged deficiencies with regard to the administration of the oath to the prospective jurors prior to questioning of the prospective jurors by the court, the State, and Lepsch's counsel.

¶41 Lepsch's briefing essentially discusses his constitutional rights at voir dire. We are thus able to immediately dismiss most of Lepsch's argument because he was, in fact, present at voir dire. Black's Law Dictionary defines "voir dire" as "[a] preliminary examination of a prospective juror by a judge or lawyer to decide whether the prospect is qualified and suitable to serve on a jury," adding that "[l]oosely, the term refers to the jury-selection phase of trial." Voir dire, Black's Law Dictionary 1805 (10th ed. 2014). We decline to adopt Lepsch's more expansive conception of voir dire, according to which proceedings involving management of the

---

[17] Other than a cursory reference to his right to be present "with counsel," Lepsch does not brief a distinct claim that he was denied the right to counsel when the prospective jurors were sworn, see, e.g. Iowa v. Tovar, 541 U.S. 77, 80-81 (2004), or explain how we should analyze such a claim. Instead, he repeatedly focuses on his own right to be present. Thus, we do not address the question. See State v. Gracia, 2013 WI 15, ¶28 n.13, 345 Wis. 2d 488, 826 N.W.2d 87 ("[W]e do not usually address undeveloped arguments.").

24

jury pool occurring prior to the entry of the prospective jurors into the courtroom are given constitutional significance. Lepsch has not sufficiently explained why voir dire encompasses the administration of the oath to the prospective jurors any more than it encompasses the completion of the questionnaires by the prospective jurors prior to the start of trial.

¶42 Similarly, we reject as meritless Lepsch's contention that the circuit court, not a clerk, was required by statute to administer the oath. Lepsch cites Wis. Stat. § 805.08(1) (2013-14), which states that:

> The court shall examine on oath each person who is called as a juror to discover whether the juror is related by blood, marriage or adoption to any party or to any attorney appearing in the case, or has any financial interest in the case, or has expressed or formed any opinion, or is aware of any bias or prejudice in the case.

Wis. Stat. § 805.08(1) (2013-14). In response, the State cites Wis. Stat. § 756.001(5) (2013-14), which states that "[t]he clerk of circuit court, if delegated by and under the supervision of the judge responsible for administering the jury system, may select and manage juries under policies and rules established by the judges in that circuit court." Lepsch does not appear to have much of a reply to this argument. Nor does Lepsch explain how he was harmed by the putative error, other than to point to his other constitutional claims. We dismiss Lepsch's argument regarding the identity of the administrator of the oath as undeveloped. See State v. Gracia, 2013 WI 15, ¶28

25

n.13, 345 Wis. 2d 488, 826 N.W.2d 87 ("[W]e do not usually address undeveloped arguments.").

¶43 More generally, however, Lepsch's line of argument relating to the administration of the oath to the prospective jurors "ignores the[] day-to-day realities of courtroom life and undermines society's interest in the administration of criminal justice." Rushen v. Spain, 464 U.S. 114, 119 (1983) (per curiam). Clerks play a critical role in the daily functioning of our court systems, and the procedures challenged by Lepsch doubtlessly occur in courthouses throughout the State. Were we to accept Lepsch's arguments, we would be casting doubt on the clerks' capacity to act, as clerks routinely do, in the summoning and preparing of prospective jurors for the circuit courts of the State. See, e.g., Wis. Stat. § 756.04(9)(a) (2013-14) ("Prospective juror lists; number; how compiled. . . . During each year, the clerk of circuit court shall provide the court with a sufficient number of names of prospective jurors to meet the needs of the court."); § 756.05 (2013-14) ("Jury summons, when and how issued. At least 12 days before the first day on which a jury is required to be present, to create the jury venire, the clerk of circuit court shall randomly select a sufficient number of prospective jurors from the jury array created under s. 756.04 (9) who shall be summoned to appear before the court at an appropriate time for jury service."); § 756.06(1) (2013-14) ("Jury selection. (1) Whenever an issue is to be tried before a jury, the clerk of circuit court shall randomly select names from the jury venire

26

until the desired number is obtained to create the jury panel."); § 756.07 (2013-14) ("Insufficient jurors. When a sufficient number of jurors cannot be obtained for a trial from the jury venire supplied by the clerk of circuit court, the court may order the sheriff to bring before the court persons in the vicinity for determination by the court of their qualification and ability to serve as jurors for the particular trial."). We decline to do so today.

¶44 Even assuming for the sake of argument that error existed, Lepsch still cannot succeed. We first address Lepsch's putative right to be present. Although he does not cite any applicable constitutional provisions, Lepsch includes a pair of court of appeals decisions in his brief containing the proposition that "[t]he right to be present at jury selection is . . . protected by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 7 of the Wisconsin Constitution."[18]  State v. Harris, 229 Wis. 2d 832, 839, 601 N.W.2d 682 (Ct. App. 1999); see State v. Tulley, 2001

---

[18] See supra n.6.

WI App 236, ¶6, 248 Wis. 2d 505, 635 N.W.2d 807.[19] Additionally, Wis. Stat. § 971.04(1)(c) (2013-14) states that, subject to certain exceptions, "the defendant shall be present: . . . During voir dire of the trial jury." Wis. Stat. § 971.04(1)(c) (2013-14).

¶45 We observe that the parties at times discuss this claim in terms of harmless error analysis. And indeed, there is case law supporting such an approach. See, e.g., Tulley, 248 Wis. 2d 505, ¶7 ("[D]eprivation of . . . the defendant's right to be present . . . during voir dire is reviewed on appeal for harmless error." (citing Harris, 229 Wis. 2d at 839-40)); Spain, 464 U.S. at 117-18 n.2 ("right to be present during all critical stages of the proceedings" is "subject to harmless-error analysis"). Yet, without much explanation, the parties also address the claim as one of ineffective assistance of counsel.

¶46 We note that under a harmless error analysis, the State would bear the burden of establishing that any error was harmless because it stands to benefit from such an error. See, e.g., State v. Martin, 2012 WI 96, ¶45, 343 Wis. 2d 278, 816

---

[19] The Supreme Court has explained, "The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." United States v. Gagnon, 470 U.S. 522, 526 (1985) (per curiam) (citation omitted); see also State v. Alexander, 2013 WI 70, ¶26, 349 Wis. 2d 327, 833 N.W.2d 126. The parties do not address this important distinction, but we need not apply it to the facts of this case given our holding.

N.W.2d 270. Conversely, pursuant to an ineffective assistance of counsel analysis, the burden would be on Lepsch to establish ineffective assistance of counsel. See Carter, 324 Wis. 2d 640, ¶21. Nevertheless, whether the claim is addressed under harmless error review or under the rubric of ineffective assistance of counsel, Lepsch is not entitled to relief.

¶47 Even if Lepsch had statutory and constitutional rights to be present at the swearing of the prospective jurors, any error stemming from Lepsch's absence was harmless. The La Crosse County Clerk of Courts swore in an affidavit:

> I was present with prospective jurors on July 23, 2013 in the matter of State v. Lepsch . . . in the jury assembly room for jury selection. . . . Prior to having the jurors transported to the courtroom via elevator to be individually questioned, I performed the oath as required with all prospective jurors.

The circuit court below found that the prospective jurors were indeed given the oath. Further, as discussed, Lepsch has not demonstrated that his jury was anything less than impartial. We agree with the State that any error was harmless, and Lepsch does not give us reason to conclude otherwise. See, e.g., State v. Deadwiller, 2013 WI 75, ¶41, 350 Wis. 2d 138, 834 N.W.2d 362 (quoting Martin, 343 Wis. 2d 278, ¶45) ("[A]n error is harmless if the beneficiary of the error proves beyond a reasonable doubt

that the error complained of did not contribute to the verdict obtained.").[20]

¶48 For similar reasons, under an ineffective assistance of counsel analysis, we conclude that Lepsch's attorneys' failure to object to Lepsch's absence at the swearing of the prospective jurors did not prejudice[21] Lepsch even if this failure constituted deficient performance. Thiel, 264 Wis. 2d 571, ¶20 ("In order to demonstrate that counsel's deficient performance is constitutionally prejudicial, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability

---

[20] With regard to this harmless error analysis, on the last page of his reply brief Lepsch directs the court to his discussion of "actual prejudice" on page 43 of his brief-in-chief. However, page 43 of his brief-in-chief discusses "actual prejudice" with regard to his public trial argument. As will be shown, these claims of prejudice fail. They likewise do not establish that reversal is required under a harmless error analysis. State v. Deadwiller, 2013 WI 75, ¶41, 350 Wis. 2d 138, 834 N.W.2d 362 (quoting State v. Martin, 2012 WI 96, ¶45, 343 Wis. 2d 278, 816 N.W.2d 270).

[21] Although Lepsch combines all of his constitutional claims relating to administration of the oath together for purposes of his argument pertaining to ineffective assistance of counsel and argues that "the failure to properly administer the oath to prospective jurors amounted to structural error," he does not argue that we should presume prejudice with regard to this specific error. Instead, we understand Lepsch to argue that structural error arose with regard to violations of his rights to an impartial jury and to a public trial. We discuss these claims elsewhere in this opinion.

30

is a probability sufficient to undermine confidence in the outcome.'" (quoting Strickland, 466 U.S. at 694)).[22]

¶49 Second, we conclude that, contrary to Lepsch's contention, Lepsch has forfeited his claim that the swearing of prospective jurors outside of his presence violated his right to receive a public trial by failing to raise an objection below. "The Sixth Amendment to the United States Constitution provides an accused the right to a public trial . . . . The Supreme Court has determined that the public trial right is applicable to the states based on its incorporation into the Fourteenth Amendment."[23]  State v. Pinno, 2014 WI 74, ¶40, 356 Wis. 2d 106, 850 N.W.2d 207 (citing Presley v. Georgia, 558 U.S. 209, 211-12 (2010) (per curiam)).  In Pinno we "decline[d] to allow defendants who failed to object to the closure of a courtroom to raise that issue for the first time after the trial is over," and concluded that "the Sixth Amendment right to a public trial may be forfeited when a defendant knows that the judge has ordered the public to leave the courtroom but does not object." Pinno, 356 Wis. 2d 106, ¶63.

¶50 Lepsch argues Pinno is inapposite because "[a]t no time during the proceedings did the trial court inform Lepsch that the oath to the prospective jurors would be administered in

---

[22] We decline to address, as undeveloped, Lepsch's aside that the administration of the oath violated SCR ch. 71 ("Required Court Reporting").  See Gracia, 345 Wis. 2d 488, ¶28 n.13.

[23] See supra n.6.

31

the 'jury assembly room' by the clerk rather than the judge in open court." We agree with the statement of the court of appeals: "Clearly, Lepsch was aware at the time of the jury voir dire that the oath had not been administered to the jury venire in his presence in open court. Lepsch has not provided any support for his assertion that he was unaware of the manner in which the oath had been administered to the jury venire at the time of voir dire." Lepsch, unpublished slip op., ¶7.[24]

¶51 Lepsch argues Pinno should not be applied because "Lepsch can show actual prejudice." Lepsch argues that "[t]o the extent that the administration of the oath was defective, which Lepsch maintains it was, it precluded him from receiving a trial by an impartial jury." It is not clear what Lepsch means by this line of reasoning given that Pinno's discussion of prejudice occurred in the ineffective assistance of counsel context, see Pinno, 356 Wis. 2d 106, ¶¶81-91, and Lepsch seemingly makes this argument independent of any ineffective assistance of counsel claim.

¶52 In any event, the argument cannot succeed because the manner of the administration of the oath did not "preclude[] [Lepsch] from receiving a trial by an impartial jury." Lepsch states that "[i]f a juror is not sworn or not sworn properly, then that juror cannot be deemed to be an 'impartial' juror for

---

[24] In fact, at least before this court, Lepsch does not appear to specifically assert that he was unaware of the manner in which the oath had been administered——he simply states he should have been provided notice.

32

the 6th Amendment or Article 1, Section 7 [of the Wisconsin Constitution]." But this case does not involve prospective jurors who were not sworn, as the affidavit of the La Crosse County Clerk of Courts confirms. And Lepsch does not explain why the two potential defects he identifies——that the oath was administered by a clerk rather than the circuit court and that Lepsch was absent at the administration of the oath——means that the jury was not "sworn properly" for purposes that would be relevant to the impartiality of his jury. In other words, Lepsch's statement that the manner of administration of the oath meant that his jury was not impartial is simply conclusory.[25] Without more, we are unable to conclude that Lepsch's jury was not impartial. Accordingly, we apply <u>Pinno</u> and conclude that Lepsch's claim is forfeited.[26]

---

[25] If Lepsch means to suggest that other defects existed, he does not identify them.

[26] Lepsch adds, at the end of his argument, that "[I]n addition to the prejudice caused immediately to Lepsch by the public trial violation, prejudice also existed as to the public at large and the media, both of which had an obvious and compelling interest in maintaining an open court." This is an argument that implicates the First Amendment, among other sources of law, see <u>State v. Pinno</u>, 2014 WI 74, ¶70, 356 Wis. 2d 106, 850 N.W.2d 207, and requires greater development before we will consider it. It is unclear, for instance, how Lepsch's statement fits into his general argument and why the proposition he recites would require us to determine that he had not forfeited his claim. We do not address it further. <u>Cemetery Servs., Inc.</u>, 221 Wis. 2d at 831 ("Constitutional claims are very complicated from an analytic perspective, both to brief and to decide. A one or two paragraph statement that raises the specter of such claims is insufficient to constitute a valid appeal of these constitutional issues to this court.").

¶53 Having concluded that Lepsch's claim is indeed forfeited, we proceed to Lepsch's contention that his attorneys' failure to "ensure that the trial court properly administered the oath to the jury venire in Lepsch's presence constituted ineffective assistance of counsel." With regard to the prejudice prong of the analysis, Lepsch's argument consists of two sentences. First, "In terms of prejudice, Lepsch suffered actual prejudice in that an improperly sworn jury did not and could not constitute an impartial jury." We have already rejected this argument. Second, "In the alternative, this Court should presume prejudice given that the failure to properly administer the oath to prospective jurors amounted to structural error." We read this vague argument to refer back to Lepsch's earlier argument: "[T]he improper administration of the oath created two different structural errors. The first directly pertained to Lepsch's right to a public trial and the second pertained to Lepsch's right to an impartial jury." Because we have concluded that Lepsch's right to an impartial jury was not violated by the administration of the oath by the clerk outside of his presence, we need only address ineffective assistance as it pertains to Lepsch's first claim related to his right to a public trial.

¶54 In Pinno we concluded that a presumption of prejudice was not appropriate in cases involving "the denial of the right to a public voir dire." Pinno, 356 Wis. 2d 106, ¶85. Below, the court of appeals remarked that Lepsch had "not developed an argument distinguishing the claimed structural errors in this

34

case from the errors in <u>Pinno</u>, <u>id.</u>, ¶¶83-86, which were deemed not to give rise to a presumption of prejudice."  <u>Lepsch</u>, unpublished slip op., ¶8.  Lepsch has not altered his approach before this court.  Therefore, we reject his argument.  Finally, we note that Lepsch has not demonstrated that he was prejudiced in any other way by his attorneys' failure to object to the manner of the administration of the oath.  We conclude that he was not denied the effective assistance of counsel with regard to this claim.[27]

## C.  Peremptory Strikes

¶55 Finally, Lepsch argues that the circuit court's failure to award him the proper number of peremptory strikes, along with its failure to strike certain jurors for cause, violated his rights to due process of law and to an impartial jury.  Lepsch argues that he was given six peremptory strikes rather than the seven to which he was entitled, and that he was forced to exhaust his strikes on jurors who should have been dismissed for cause, such that he was unable to dismiss the jurors who actually sat on his jury.  He contends that his attorneys were ineffective in failing to object to receiving an

---

[27] Additionally, we reiterate our earlier rejection of Lepsch's argument that voir dire encompasses the administration of the oath to the prospective jurors in the first place.  He has not adequately explained why the administration of the oath to the prospective jurors in the jury assembly room, if not part of voir dire, would nevertheless violate his right to a public trial.

incorrect number of peremptory strikes and in failing to challenge certain jurors for cause.

¶56 There seems to be no dispute that both Lepsch and the State were entitled to seven peremptory strikes under the law but were only given six each. See Wis. Stat. § 972.03 (2013-14). Nevertheless, we conclude, again, that even if Lepsch's attorneys performed deficiently in not raising the appropriate objections and challenges, Lepsch was not prejudiced by the performance.

¶57 As has been stated, Lepsch has not shown that any of his jurors were biased. With regard to Lepsch's complaint that he was entitled to an additional peremptory strike, this case is therefore not unlike Erickson, where both the State and the defendant were granted four peremptory strikes rather than the seven to which they were entitled. Erickson, 227 Wis. 2d at 762. Analyzing the defendant's ineffective assistance of counsel claim, we "decline[d] to presume prejudice every time there [was] a denial of an equal number of peremptory strikes to both the defense and the prosecution" and where "[t]here [was] little doubt that [the defendant] was judged by an impartial jury." Id. at 761, 777. We then concluded that a determination that actual prejudice existed was inappropriate: "In the end, we can do no better than speculate on what would have been the result of [the defendant's] trial had the circuit court not erred, which is also the best that Erickson can offer." Id at 774. The same analysis applies in this case.

36

¶58 Second, assuming Lepsch was forced to use peremptory strikes on jurors who should have been challenged for cause, the error did not in fact result in a biased juror sitting on Lepsch's jury. Consequently, the ineffective assistance claim Lepsch has made[28] fails. See State v. Traylor, 170 Wis. 2d 393,

---

[28] For the most part, Lepsch's argument hinges on his belief that biased jurors sat on his jury. However, Lepsch summarily remarks, citing State v. Sellhausen, 2012 WI 5, 338 Wis. 2d 286, 809 N.W.2d 14, that "[w]here a defendant is forced to use most or all of his peremptory strikes to strike jurors who should have been properly excused by the trial court for cause, the error is harmful." Sellhausen's discussion of this point in turn cited to State v. Lindell, 2001 WI 108, 245 Wis. 2d 689, 629 N.W.2d 223. See Sellhausen, 338 Wis. 2d 286, ¶¶17-18. However, Lepsch fails to note that Lindell examined whether "[t]he substantial rights of a party are . . . affected or impaired when a defendant chooses to exercise a single peremptory strike to correct a circuit court error," and stated it was "not called upon here to evaluate other situations." Lindell, 245 Wis. 2d 689, ¶113 (emphasis added); see also id., ¶119 (noting the State's concession that "reversal might be appropriate when a circuit court judge . . . makes errors that force a defendant to use most or all of his or her peremptory strikes" (emphasis added)). In other words, the extent to which the proposition of law cited by Lepsch is settled is not at all clear.

(continued)

400, 489 N.W.2d 626 (Ct. App. 1992) ("Traylor cannot prove prejudice unless he can show that the exhaustion of peremptory challenges left him with a jury that included an objectionable or incompetent member. Wisconsin's longstanding rule is that where a fair and impartial jury is impaneled, there is no basis for concluding that a defendant was wrongly required to use peremptory challenges." (citation omitted)).

## IV. CONCLUSION

¶59 We conclude that each of Lepsch's claims fails, and that he is not entitled to a new trial. Consequently, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

---

Despite this fact, Lepsch does not develop an argument discussing the application of this proposition to his case at all or the appropriateness of doing so, whether as an independent claim or within the ineffective assistance of counsel framework. As stated, most of Lepsch's argument depends on his assumption—which we have rejected—that biased jurors sat on his jury. Moreover, were we to examine a claim that reversal is warranted regardless of whether Lepsch's jury was impartial or not, we would need to determine whether the circuit court had indeed improperly failed to strike for cause the five jurors Lepsch identifies. Yet Lepsch's discussion of the circuit court's putative errors in this regard is cursory. We decline to construct an argument for him and delve into this area of law on the basis of an inadequately-developed argument. Thus, we do not address this claim further. Cemetery Servs., Inc., 221 Wis. 2d at 831.

¶60 SHIRLEY S. ABRAHAMSON, J. *(concurring).* In the instant case, prospective jurors made statements either in their responses to the jury questionnaire or at voir dire or both that indicated they might not be impartial or that they might not be able to apply legal principles. The circuit court and the attorneys questioned the prospective jurors to "rehabilitate" them to enable them to serve on the jury. The question presented in the instant case is whether one or more jurors were biased notwithstanding the attempts at rehabilitation.[1]

¶61 Lepsch's challenge to the jury is grounded on the ineffective assistance of his trial counsel to challenge prospective members of the jury. Ineffective assistance of trial counsel is a two-part inquiry under Strickland v. Washington, 466 U.S. 668 (1984). The burden of proof in the instant case is on Lepsch. He must show (1) that his trial counsel performed deficiently; and (2) that the deficient performance prejudiced him. Because I conclude that the jury was not biased, I conclude that trial counsel's performance was not deficient in jury selection. I therefore do not need to reach the prejudicial prong of the Strickland analysis.[2]

---

[1] Wisconsin employs a tripartite classification of juror bias: statutory, subjective, and objective. See State v. Faucher, 227 Wis. 2d 700, 717-19, 596 N.W.2d 770 (1999).

The federal courts do not use this terminology but use analogous principles to discuss jury bias.

[2] Jury bias is a structural error:

When concluding in our previous cases that a juror was biased and was erroneously impaneled, the court has reversed the defendant's conviction and ordered a new

(continued)

1

¶62 The right to an impartial jury is guaranteed by statute and the federal and state constitutions. I begin with Wis. Stat. § 805.08(1) (2015-16),[3] which requires a court to examine on oath each person who is called as a juror to discover whether the juror has expressed or formed any opinion, or is aware of any personal bias or prejudice in the case. The statute enables any party to challenge a juror for cause and

---

trial without inquiry into harmless error. These cases reflect the rule that juror bias taints the entire proceeding and requires automatic reversal. Juror bias is a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. Juror bias seriously affects the fairness, integrity, or public reputation of judicial proceedings and is per se prejudicial.

State v. Tody, 2009 WI 31, ¶44, 316 Wis. 2d 689, 764 N.W.2d 737 (footnote omitted), abrogated on other grounds by State v. Sellhausen, 2012 WI 5, 338 Wis. 2d 286, 809 N.W.2d 14.

[3] Wisconsin Stat. § 805.08(1) provides:

Qualifications, examination. The court shall examine on oath each person who is called as a juror to discover whether the juror is related by blood, marriage or adoption to any party or to any attorney appearing in the case, or has any financial interest in the case, or has expressed or formed any opinion, or is aware of any bias or prejudice in the case. If a juror is not indifferent in the case, the juror shall be excused. Any party objecting for cause to a juror may introduce evidence in support of the objection. This section shall not be construed as abridging in any manner the right of either party to supplement the court's examination of any person as to qualifications, but such examination shall not be repetitious or based upon hypothetical questions (emphasis added).

All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

introduce evidence in support of an objection. It sets the standard for excusing a prospective juror: "If a juror is not indifferent in the case, the juror shall be excused." Several Wisconsin cases interpret and apply the statutory standard of "indifferent."[4]

¶63 The court took this case to determine whether Wisconsin case law relating to juror bias is consistent with or in tension with the United States Supreme Court's and the

_____

[4] See, e.g., Tody, 316 Wis. 2d 689, ¶36. Tody addresses the statute as follows:

> "To be impartial, a juror must be indifferent and capable of basing his or her verdict upon the evidence developed at trial." A juror therefore should be viewed as objectively biased if a reasonable person in the juror's position could not avoid basing his or her verdict upon considerations extraneous to evidence put before the jury at trial.

(Quoting Faucher, 227 Wis. 2d at 715.)

Faucher, 227 Wis. 2d at 715, addresses the statute as follows:

> To be impartial, a juror must be indifferent and capable of basing his or her verdict upon the evidence developed at trial. Irvin v. Dowd, 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961). The requirement that a juror be indifferent is codified in Wis. Stat. § 805.08(1) (1995-96). That statute requires the circuit court to examine on oath each person who is called as a juror to discover if he or she "has expressed or formed any opinion or is aware of any bias or prejudice in the case." Wis. Stat. § 805.08(1). The statute directs that "[I]f a juror is not indifferent in the case, the juror shall be excused." Id. We have stated that even the appearance of bias should be avoided. [State v.] Louis, 156 Wis. 2d [470,] 478, 457 N.W.2d 484 [(1990)]. (Footnote omitted.)

3

Seventh Circuit Court of Appeals' interpretations of the Sixth Amendment right to trial by "an impartial jury." Lepsch and the Office of the State Public Defender (which filed a non-party brief) request this court to clarify Wisconsin's juror bias law to resolve the perceived tension.[5]

¶64 The majority opinion fails to address this perceived tension. Instead, it merely explains in a footnote that Lepsch's citations to "lower federal court" decisions are unavailing and that this court is not bound by "lower federal court" decisions. Majority op., ¶35 n.14 (citing Madison Teachers, Inc. v. Walker, 2014 WI 99, ¶68, 358 Wis. 2d 1, 851 N.W.2d 337).

¶65 I address the issue of perceived tension and conclude that any perceived tension arises because Wisconsin cases on jury bias have apparently not considered Patton v. Yount, 467 U.S. 1025 (1984), and need to be harmonized.[6]

---

[5] In Oswald v. Bertrand, 249 F. Supp. 2d 1078 (E.D. Wis. 2003), the federal district court granted habeas corpus to a defendant convicted in a Wisconsin circuit court. The district court ruled that the Wisconsin circuit court had failed to comply with the Seventh Circuit requirement of an "unequivocal" declaration by a juror. In contrast, the federal court of appeals affirmed the district court but concluded that the inquiry the Wisconsin circuit court conducted "flunked the constitutional test that 'the investigation be reasonably calculated to resolve the doubts raised about the juror's impartiality.'" Oswald v. Bertrand, 374 F.3d 475 (7th Cir. 2004) (quoted source omitted).

[6] For a discussion of the development of Wisconsin's juror bias case law and the challenges that the case law has created for the bench and bar, see Kurt F. Ellison, Getting Out of the Funk: How Wisconsin Courts Can Protect Against the Threat to Impartial Jury Trials, 96 Marq. L. Rev. 953 (2013).

4

¶66 I begin with the test set forth by the United States Supreme Court, the supreme law of the land, which this court is obliged to follow. In Patton, 467 U.S. at 1036, 1038, 1040, the United States Supreme Court stated the applicable test to determine whether a prospective juror can suspend a belief or opinion calling his or her impartiality into question. The Court also set forth the standard for appellate review of a trial court's determination of the prospective juror's impartiality. This two-part test is as follows:

> Did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality [be] believed. . . . [T]he determination is essentially one of credibility, and therefore largely one of demeanor. . . . It is here that the federal court's deference must operate, for while the cold record arouses some concern, only the trial judge could tell which of these answers was said with the greatest comprehension and certainty.

Patton, 467 U.S. at 1036, 1038, 1040.

¶67 The Seventh Circuit Court of Appeals, also obliged to follow the decisions of the United States Supreme Court, has stated its own construction of the applicable test to determine whether a prospective juror can suspend a belief calling his or her impartiality into question. The Seventh Circuit has also set forth the standard for appellate review of a trial court's determination of the prospective juror's impartiality. The Seventh Circuit's two-part test has been stated in the following formulations:

- Marshall v. City of Chicago, 762 F.3d 573 (7th Cir. 2014) (citing United States v. Allen, 605 F.3d 461, 464-65 (7th Cir. 2010):

5

The judge looks for an unwavering affirmation of impartiality, without which the juror should be excused. The requirement is satisfied by a juror's affirmation, for example, that she can set aside any opinion she might hold, relinquish her prior beliefs, or lay aside her biases or her prejudicial personal experiences. United States v. Allen, 605 F.3d 461, 464-65 (7th Cir. 2010) (internal citations omitted). Ultimately, the decision whether to excuse a juror for cause rests firmly within the discretion of the district judge, and we will reverse only where we find an abuse of such. . . . (abuse of discretion occurs only where "no reasonable person would agree with the trial court's ruling").

- United States v. Allen, 605 F.3d 461, 464-65 (7th Cir. 2010):

  [The mandates of due process and an impartial jury] are satisfied, when seating a prospective juror despite a party's for-cause challenge, if the prospective juror has given final, unequivocal assurances, deemed credible by the judge, that for purposes of deciding the case, she can "set aside any opinion [she] might hold," Patton v. Yount, 467 U.S. 1025, 1036 . . . (1984), "relinquish her prior beliefs, [Thompson v. Altheimer & Gray, 248 F.3d 621, 626], or "lay aside her biases or her prejudicial personal experiences, United States v. Gonzalez, 214 F.3d 1109, 1114 (9th Cir. 2000). See Thompson, 248 F.3d at 626 (collecting cases).

  The district court was within its discretion to find that the prospective juror gave final, unequivocal, and credible assurances that she could set aside any bias . . . and decide the case on the evidence . . . .

  Prior equivocating or wavering is hardly dispositive in assessing credibility, as "[j]urors . . . cannot be expected invariably to express themselves . . . consistently." . . . Because appellate judges are absent from voir dire, when a prospective juror fails to express herself "carefully or even consistently . . . it is [the trial] judge who

6

is best situated to determine competency to serve impartially." Patton, 467 U.S. at 1039 . . . .[7]

¶68 Examining Marshall and Allen, two Seventh Circuit Cases, side-by-side, it becomes clear that Allen uses slightly different language than Marshall. Lepsch and the SPD's office cite Allen as illustrating the tension among Patton, the Seventh Circuit cases, and the Wisconsin cases on jury bias.

¶69 Language in some Wisconsin cases is similar to the language in Patton and to the cases from the Seventh Circuit Court of Appeals. For example, this court stated in State v. Kiernan, 227 Wis. 2d 736, 745, 596 N.W.2d 760 (1999), that an acceptable juror is

---

[7] In United States v. Taylor, 777 F.3d 434, 441 (7th Cir. 2015), the Seventh Circuit Court of Appeals stated the applicable test as follows:

> The requirement of an impartial jury is met when "the prospective juror has given final, unequivocal assurances, deemed credible by the judge, that for purposes of deciding the case, she can set aside any opinion [she] might hold, relinquish her prior beliefs, or lay aside her biases or her prejudicial personal experiences." Allen . . . .

> A prospective juror does not come to the courtroom as a tabula rasa. The important question is whether the juror can put aside the experiences and beliefs that may prejudice his view of the case and render a verdict based on the evidence and the law. Although R.W. was initially equivocal . . . the judge's follow-up examination cleared up the ambiguity. The judge asked him if he "could be fair and impartial to both sides and decide this case only on the evidence introduced during this trial and the law that I am giving you." To this question R.W. answered "yes" without qualification. This unequivocal assurance——deemed credible by the trial judge——is sufficient.

a reasonable person who is sincerely willing to set aside any opinion or prior knowledge that the juror might have. Discerning whether a juror exhibits this type of bias depends upon that juror's verbal responses to questions at voir dire, as well as that juror's demeanor in giving those responses. These observations are best within the province of the circuit court (citation omitted).[8]

¶70 The United States Supreme Court cases, the Seventh Circuit cases, and the Kiernan case are similar in three important respects: (1) An individual can be seated as a juror if he or she can set aside an opinion or bias; (2) the trial judge must believe the prospective juror's statement of impartiality; and (3) appellate review is deferential because the trial judge is best situated to determine a prospective juror's ability to serve impartially.

¶71 The difference among the three courts, according to Lepsch and the Public Defender, is the language in the Seventh Circuit cases demanding that the prospective juror give "final, unequivocal assurances" that he or she will set aside any bias and decide the case on the evidence. This phrase, "final, unequivocal assurances," does not appear in Patton. Patton seems to leave more room for trial court discretion in assessing the juror's impartiality than does the "final, unequivocal assurances" language.

¶72 It is not surprising, then, that a careful reading of the Seventh Circuit cases shows that the "final, unequivocal assurances" language also leaves room for various types of

---

[8] See also State v. Oswald, 2000 WI App 2, ¶19, 232 Wis. 2d 62, 606 N.W.2d 207.

responses by a prospective juror and for trial court discretion to evaluate those responses. A study of the Seventh Circuit's applications of the "final, unequivocal assurances" language demonstrates that the Seventh Circuit requires the bare minimum of assurances.

¶73 For example, in United States v. Allen, 605 F.3d 461, 464-65 (7th Cir. 2010), the Seventh Circuit reviewed a district court's finding that a juror was not biased. That juror initially submitted a juror questionnaire stating that she would have a hard time being fair because of a prior incident. Upon questioning by the trial judge, the juror's answers reaffirmed this belief. But, upon further questioning (this kind of more rigorous, "digging down" type of questioning is sometimes referred to as "rehabilitating" the prospective juror) the judge instructed her that "both sides are entitled to fairness" and asked her whether she could keep an open mind. The juror replied that she could. Upon even further questioning, the juror stated that she "would give [the defendant] the benefit of the doubt until evidence was presented." The district court judge decided that this juror was not biased.

¶74 The Seventh Circuit affirmed the decision of the district court. The Seventh Circuit first set forth the applicable "final, unequivocal assurances" test as follows: The requirement of an impartial jury is met when

> the prospective juror has given final, unequivocal assurances, deemed credible by the judge, that for purposes of deciding the case, she can set aside any opinion [she] might hold, relinquish her prior

beliefs, or lay aside her biases or her prejudicial personal experiences.

Allen, 605 F.3d at 464-65 (internal quotation marks and citations omitted).

¶75 After setting forth this test, the Allen court emphasized that "[p]rior equivocating or wavering is hardly dispositive in assessing credibility, as '[j]urors . . . cannot be expected invariably to express themselves . . . consistently.'" Allen, 605 F.3d at 466 (quoting Patton, 467 U.S. at 1039).

¶76 The Allen court also emphasized that "[b]ecause appellate judges are absent from voir dire, when a prospective juror fails to express herself 'carefully or even consistently . . . it is [the trial] judge who is best situated to determine competency to serve impartially.'" Allen, 605 F.3d at 466 (quoting Patton, 467 U.S. at 1039).

¶77 Although the Allen court of appeals suggested that the trial court could have engaged in more rigorous, explicit questioning of the juror, the court of appeals accepted, as an unequivocal statement, the juror's statement that she would give the defendant "the benefit of the doubt." Allen, 605 F.3d at 466.[9]

_____

[9] In United States v. Allen, 605 F.3d 461, 466 (7th Cir. 2010), the Seventh Circuit Court of Appeals upheld the district court's seating a juror despite her multiple equivocal and unequivocal comments as follows:

We do not doubt that the trial judge's questioning of the prospective juror could have been more explicit in determining whether she would be able to "set aside any opinion [she] might hold," Patton, 467 U.S. at

(continued)

¶78 Thus, although the literal language in the Seventh Circuit cases requires "final, unequivocal assurances" that a juror is impartial, that assurance can be as minimal as an affirmative response to a judge's question whether the juror can be impartial. And, whatever the trial court's determination may be, it is accorded substantial deference by an appellate court because the trial court is in a position to judge the juror's credibility.

¶79 Furthermore, cases from other federal courts of appeals are cited by the Seventh Circuit. These other federal courts do not use the same "unequivocal" language as the Seventh Circuit. These cases ask whether the prospective juror swore to set aside any opinion or bias and decide the case on the

---

1036 . . . "relinquish her prior beliefs," Thompson, 248 F.3d at 626, or "lay aside her biases or her prejudicial personal experiences," Gonzalez, 214 F.3d at 1114. Nevertheless——given the relatively minimal bias the prospective juror must have had toward finding this particular defendant guilty, her final and unequivocal statement that she would give Allen the benefit of the doubt until the close of trial, and her demonstrated ability to follow the judge's instructions——we hold that the district court was within its discretion to find that the prospective juror' prior experience would not impede her ability to decide the case fairly. So we find no violation of Allen's rights to due process and to an impartial jury.

11

evidence and whether the juror's protestation of impartiality can be believed by the trial court.[10]

¶80 After considering Patton and the Seventh Circuit cases, I turn to the Wisconsin jury bias decisions.

¶81 Although several of Wisconsin's jury cases were decided after Patton, few cite Patton.

¶82 Reference to Patton appears in State v. Ferron, 219 Wis. 2d 481, 579 N.W.2d 654 (1998), abrogated on other grounds by State v. Lindell, 2001 WI 108, 245 Wis. 2d 689, 629 N.W.2d 223, in which the court cited Patton for the proposition that "[i]t is a well-settled principle of law in this state that a determination by a circuit court that a prospective juror can be impartial should be overturned only where the prospective

---

[10] See, e.g., United States v. Jones, 716 F.3d 851, 857 (4th Cir. 2013) ("Although a juror's avowal of impartiality is not dispositive, if a district court views juror assurances of continued impartiality to be credible, the court may rely upon such assurances in deciding whether a defendant has satisfied the burden of proving actual prejudice." (citation omitted)) (citing Murphy v. Florida, 421 U.S. 794, 800 (1975)); Montgomery v. Bobby, 654 F.3d 668, 684 (6th Cir. 2011) ("When presented with an allegation of bias, the question is 'did a juror swear that [s]he could set aside any opinion [s]he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed.'" (quoted source omitted); finding no juror bias when judge asked whether juror's self-reported bias would "have any effect on your consideration of the matter that is before the jury now?" with the juror responding, "No, no"); United States v. Rowe, 144 F.3d 15 (1st Cir. 1998) (explaining that the trial court finding of no juror bias will be upheld unless clearly erroneous; finding no bias where the trial court "asked Juror A whether his concern would 'in any way impede or impair [his] impartial consideration of the case,' and the juror assured the court that his evaluation of the case would be impartial.") (juror's exact response not provided in opinion).

juror's bias is 'manifest.' . . . The United States Supreme Court has frequently ruled to the same effect. See, e.g., Patton v. Yount, 467 U.S. 1025, 1031-32 . . . ."

¶83 Ferron's reliance on this "manifest error" language is of dubious value. Patton discussed jury bias resulting from pretrial publicity and explained that an amended habeas statute may have replaced this "manifest error" standard. Patton, 467 U.S. at 1032 n.7.[11]

¶84 But, more importantly, as I read Wisconsin decisions in which I joined almost twenty years ago, I see a problem: The Wisconsin cases include language that is internally and externally inconsistent; language that is hard to understand and apply; and language that does not conform to the Patton test.

¶85 In State v. Faucher, 227 Wis. 2d 700, 731 n.8, 596 N.W.2d 70 (1999), for instance, the court stated: "We remain committed to our view that a prospective juror need not unambiguously state his or her ability to set aside a bias."

¶86 Likewise, in State v. Erickson, 227 Wis. 2d 758, 776, 596 N.W.2d 749 (1999), the court stated: "[A] prospective juror need not respond to voir dire questions with unequivocal declarations of impartiality. Indeed, we . . . fully expect a juror's honest answers at times to be less than unequivocal."

---

[11] I do not address the question whether pretrial media coverage of Lepsch's case contributed to a biased jury. The parties did not raise it. Pretrial publicity cases seem to be analyzed somewhat differently than the question of the bias exhibited by an individual prospective juror. See Skilling v. United States, 561 U.S. 358 (2010) (a pretrial publicity case).

¶87 That said, a prospective juror who equivocates and says, for example, that she can "probably" be fair, was declared biased under Wisconsin law. This court explained in Ferron, 219 Wis. 2d at 501, that equivocation bars a prospective juror from serving because equivocation is insufficient to demonstrate a sincere willingness to set aside a bias:

> There are no magical words that need be spoken by the prospective juror, and the juror need not affirmatively state that he or she can "definitely" set the bias aside. Suffice it to say that without the appropriate follow-up questions by the circuit court, a juror's final word of "probably" is insufficient to indicate a sincere willingness to set aside his or her bias against parties who choose to exercise their constitutional rights. (Emphasis added).

¶88 As I read these decisions, they are somewhat contradictory and fail to provide sufficient guidance to circuit courts, the court of appeals, and this court.

¶89 I conclude, however, that the Wisconsin cases can be harmonized and stated in conformity with United States Supreme Court and Seventh Circuit Court of Appeals cases as follows:

- An impartial juror is a "reasonable person who is sincerely willing to put aside an opinion or prior knowledge." Faucher, 227 Wis. 2d at 724.

- Although a prospective juror need not say any "magic words," the record must demonstrate that the prospective juror (who is sworn under oath)[12] has committed or assured that he or she can set aside any

---

[12] See Wis. Stat. § 805.08(1); majority op., ¶¶40-43.

14

opinion or bias held and decide the case on the evidence.

- Evaluating the subjective sincerity of these expressions of impartiality of a prospective juror is a matter for the circuit court. The determination is essentially one of credibility. The expressions of the prospective juror regarding his or her impartiality are not conclusive.

- An appellate court "defers to a large extent to the decision of the circuit court about subjective [juror] bias because the circuit court is in a superior position to assess the demeanor and disposition of prospective jurors," State v. Funk, 2011 WI 62, ¶76, 335 Wis. 2d 369, 799 N.W.2d 421, and an appellate court will reverse a circuit court's decision that a juror was subjectively biased only if the decision is "clearly erroneous." Faucher, 227 Wis. 2d at 718.

- The standard of an appellate court's review of a circuit court's determination of objective juror bias is set forth in Faucher, 227 Wis. 2d at 720: An appellate court will reverse the circuit court's decision that a juror was objectively biased "only if

15

as a matter of law a reasonable judge could not have reached such a conclusion."[13]

- Finally, an important guiding principle to be followed in every case is that the circuit court should err on the side of striking prospective jurors when it is reasonable to suspect that bias is present.[14]

¶90 This is a close case for me.[15] In this concurrence, I focus on two jurors, J.A. and D.M. Each expressed the belief, in answers to the questionnaire, that police officers were more credible than other witnesses. Neither the circuit court nor either side's trial counsel sufficiently followed up with J.A. or D.M. regarding their bias. See majority op., ¶¶29-31.

---

[13] The prospective juror in Faucher, 227 Wis. 2d at 731-32, was unequivocal and unambiguous in stating he would follow the law; the circuit court seated the juror. Nevertheless, this court concluded that the circuit court erred as a matter of law in seating the juror. The court reversed the circuit court, concluding that under the circumstances of that case a reasonable judge could not have believed that the prospective juror could truly set aside his strongly held belief.

[14] See, e.g., State v. Sellhausen, 2012 WI 5, ¶29, 338 Wis. 2d 286, 809 N.W.2d 14; State v. Lindell, 2001 WI 108, ¶49, 245 Wis. 2d 689, 629 N.W.2d 223; Kanzenbach v. S.C. Johnson & Son, Inc., 273 Wis. 621, 627, 79 N.W.2d 249 (1956).

This guiding principle rings true now more than ever. The Sixth Amendment guarantee of an impartial jury and concern over systemic loss of confidence in jury verdicts have moved the United States Supreme Court to recently re-examine Batson claims and the jury "no-impeachment rule" to eliminate racial bias in the jury system. See Foster v. Chatman, 136 S. Ct. 1737 (2016); Pena-Rodriguez v. Colorado, No. 15-606, 2017WL855760 (U.S. Mar. 6, 2017).

[15] Justice Ann Walsh Bradley does not join this sentence.

16

¶91 That said, both answered "No" on their questionnaires when asked whether there was any reason why they could not be impartial. Additionally, both J.A. and D.M. were present during questioning of the jurors as a group, where questions regarding police credibility arose and neither restated his or her bias. And, finally, the State asked the group whether any prospective jurors could not be fair; neither J.A. nor D.M. responded.

¶92 The circuit court and trial counsel in the instant case could have (and should have) asked these two jurors more rigorous, explicit questions to rebut their responses that indicated bias and to firm up their ability to set aside their opinions and biases and base their decision on the evidence. Nevertheless, the record is minimally good enough to demonstrate that each juror was a reasonable person who was sincerely willing to put aside an opinion. Majority op., ¶¶29-31. I conclude that the circuit court judge was in the best position to determine whether these prospective jurors were subjectively biased. The circuit court's decision was not clearly erroneous. With regard to objective bias, I conclude that I cannot reverse the circuit court's conclusion, as a matter of law, on the ground that a reasonable judge could not have reached such a conclusion.

¶93 For the reasons set forth, I write separately.

¶94 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion, except for the first sentence of ¶90.